UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

X

MERY MORETA, individually and as Parent and Natural Guardian of C.C., a student with a disability,

Plaintiff,

**COMPLAINT**

26-cv-

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; KAMAR H. SAMUELS, in his official capacity as Chancellor of the New York City Department of Education; OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS; VILDA VERA MAYUGA, in her official capacity as Commissioner and Chief Administrative Law Judge of the Office of Administrative Trials and Hearings; NOEL R. GARCIA, in his official capacity as Deputy Commissioner of OATH's Special Education Hearings Division; WILLIAM STEWART, in his official capacity as Assistant Commissioner of OATH's Special Education Hearings Division; NEW YORK STATE EDUCATION DEPARTMENT; OFFICE OF STATE REVIEW, as part of the New York State Education Department; and BETTY A. ROSA, in her official capacity as Commissioner of Education of the State of New York,

Defendants.

X

Plaintiff MERY MORETA, individually and as Parent and Natural Guardian of C.C., a student with a disability, by and through undersigned counsel, alleges as follows:

## I. Preliminary Statement

### A. Nature of the Action

1. This is a single-student action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.; New York Education Law § 4404; 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, arising from Defendants'

failure to implement and fund C.C.'s established iBRAIN placement and specialized transportation for the 2024–2025 and 2025–2026 extended school years.

2. This action has six related but distinct components.

3. First, Plaintiff seeks enforcement of State Review Officer Decision No. 25-150 ("SRO Decision No. 25-150") for the 2024–2025 extended school year.

4. Second, Plaintiff seeks enforcement of C.C.'s 2025–2026 continuing pendency/status quo placement based on SRO Decision No. 25-150.

5. Third, Plaintiff seeks declaratory relief that SRO Decision No. 25-150 is final, binding, unappealed, enforceable, and not subject to any automatic stay.

6. Fourth, Plaintiff seeks contract-based maintained-placement costs for tuition, specialized transportation, late fees, interest, and related costs caused by DOE's nonpayment.

7. Fifth, Plaintiff seeks relief for procedural-denial-of-FAPE and delay-accountability claims arising from DOE's resolution-meeting failures, OATH hearing-timeline practices, and NYSED/OSR review delay.

8. Sixth, Plaintiff asserts claims under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against DOE based on DOE's policies, customs, practices, ratification, deliberate indifference, and failure to train or supervise concerning order-dependent, appeal-dependent, and iBRAIN/Sisters-specific implementation practices.

9. C.C. is a student with a disability within the meaning of the IDEA and New York law.

10. C.C. has complex brain-based, physical, communication, and access needs.

11. C.C. attends the International Academy for the Brain ("iBRAIN").

12. C.C.'s educational program and placement include iBRAIN and the specialized transportation necessary for C.C. to access that placement.

13. For the 2024–2025 extended school year, Parent filed a due process complaint ("DPC") concerning C.C.'s educational program, placement, pendency, tuition, and transportation. Ex. A.

14. The 2024–2025 proceeding was assigned OATH SEHD Case No. 277479. Ex. A.

15. The 2024–2025 DPC sought, among other relief, public funding for C.C.'s continued placement at iBRAIN and specialized transportation through Sisters Travel and Transportation Services, LLC ("Sisters"). Ex. A.

16. The 2024–2025 DPC requested an immediate resolution meeting. Ex. A.

17. The 2024–2025 DPC requested that, if DOE failed to hold or participate in a legally compliant resolution meeting within fifteen days, the IHO begin the impartial-hearing timeline immediately pursuant to 34 C.F.R. § 300.510(b)(5) and 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b). Ex. A.

18. The 2024–2025 DPC asserted that C.C.'s pendency rights were automatic under 20 U.S.C. § 1415(j) and N.Y. Educ. Law § 4404(4)(a). Ex. A.

19. The 2024–2025 DPC attached pendency materials identifying C.C.'s pendency placement as iBRAIN, a twelve-month program, with direct payment of full tuition to iBRAIN pursuant to the enrollment contract between iBRAIN and Parent, and daily round-trip special transportation services through Sisters pursuant to the transportation agreement with Parent. Ex. A.

20. Parent's 2024–2025 DPC attached the iBRAIN enrollment contract and Sisters transportation contract. Ex. A.

21. For the 2024–2025 school year, C.C.'s iBRAIN tuition was $337,124.20. Ex. A.

22. For the 2024–2025 school year, C.C.'s Sisters transportation cost was $220,993.00. Ex. A.

23. The total 2024–2025 principal amount for iBRAIN tuition and Sisters transportation was $558,117.20. Ex. A.

24. On July 11, 2024, Parent's counsel wrote to the IHO in OATH SEHD Case No. 277479 and preserved Parent's position that, if DOE failed to schedule a timely resolution meeting, the hearing timeline should begin on the sixteenth day after the DPC. Ex. B.

25. The July 11, 2024 email stated that the DPC had been filed on July 5, 2024. Ex. B.

26. The July 11, 2024 email stated that the resolution period should end on July 22, 2024 if DOE failed to schedule a timely resolution meeting. Ex. B.

27. The July 11, 2024 email stated that the prehearing conference deadline should be August 5, 2024. Ex. B.

28. The July 11, 2024 email stated that the compliance date should be August 31, 2024. Ex. B.

29. The July 11, 2024 email also requested that DOE provide its pendency program and placement immediately or agree to Parent's draft pendency order. Ex. B.

30. SRO Decision No. 25-150 later reversed the adverse portions of the January 27, 2025 Findings of Fact and Decision ("FOFD") for the 2024–2025 proceeding. Ex. C.

31. SRO Decision No. 25-150 modified the January 27, 2025 FOFD by reversing the portions that found DOE offered C.C. a FAPE, that iBRAIN was not an appropriate unilateral placement, and that equitable considerations warranted denial of direct tuition and transportation funding for the 2024–2025 school year. Ex. C.

32. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s tuition at iBRAIN and transportation expenses for the 2024–2025 school year in accordance with Parent's enrollment and transportation agreements. Ex. C.

33. SRO Decision No. 25-150 issued on September 29, 2025. Ex. C.

34. DOE did not appeal SRO Decision No. 25-150.

35. DOE did not obtain a stay of SRO Decision No. 25-150.

36. DOE did not obtain a reversal of SRO Decision No. 25-150.

37. DOE has made no payment toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

38. DOE has made no payment toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

39. For the 2025–2026 extended school year, Parent filed a DPC on July 2, 2025. Ex. D.

40. The 2025–2026 proceeding was assigned OATH SEHD Case No. 296761. Ex. D.

41. The 2025–2026 DPC again invoked pendency at iBRAIN and sought public funding for tuition and transportation. Ex. D.

42. The 2025–2026 DPC requested an immediate resolution meeting and requested timeline consequences if DOE failed to hold or participate in a legally compliant resolution meeting. Ex. D.

43. The 2025–2026 DPC asserted that pendency is automatic under 20 U.S.C. § 1415(j). Ex. D.

44. The 2025–2026 DPC attached pendency materials identifying iBRAIN and Sisters transportation as C.C.'s pendency/status quo package. Ex. D.

45. The 2025–2026 DPC attached the 2025–2026 iBRAIN contract and Sisters transportation contract. Ex. D.

46. For the 2025–2026 school year, C.C.'s iBRAIN tuition was $364,266.50. Ex. D.

47. For the 2025–2026 school year, C.C.'s Sisters transportation cost was $235,662.00. Ex. D.

48. The total 2025–2026 principal amount for iBRAIN tuition and Sisters transportation was $599,928.50. Ex. D.

49. SRO Decision No. 25-150 is the status-quo and pendency anchor for the 2025–2026 proceeding. Exs. C, D, F.

50. On August 11, 2025, Parent's counsel wrote to the IHO in OATH SEHD Case No. 296761 and preserved Parent's position that DOE had failed to hold a resolution meeting within fifteen days and that the hearing timeline should begin immediately. Ex. E.

51. The August 11, 2025 email stated that the DPC in IHO Case No. 296761 was filed on July 2, 2025. Ex. E.

52. The August 11, 2025 email stated that the mandatory resolution-meeting date was July 17, 2025. Ex. E.

53. The August 11, 2025 email stated that no resolution meeting was held. Ex. E.

54. The August 11, 2025 email stated that, because no resolution meeting occurred, the adjusted compliance date should be August 31, 2025. Ex. E.

55. The August 11, 2025 email requested that the IHO reset the timelines in accordance with federal and state law, schedule the hearing to proceed as soon as possible, and issue a pendency order immediately. Ex. E.

56. Parent submitted a 2025–2026 Supplemental Pendency Brief in OATH SEHD Case No. 296761. Ex. F.

57. In the 2025–2026 Supplemental Pendency Brief, Parent argued that SRO Decision No. 25-150 established C.C.'s status quo for pendency purposes. Ex. F.

58. In the 2025–2026 Supplemental Pendency Brief, Parent argued that SRO Decision No. 25-150 became final and binding when issued on September 29, 2025. Ex. F.

59. In the 2025–2026 Supplemental Pendency Brief, Parent argued that DOE's four-month appeal window did not create an automatic stay. Ex. F.

60. In the 2025–2026 Supplemental Pendency Brief, Parent relied on 34 C.F.R. § 300.518(d) and the United States Department of Education's Federal Register explanation that, when a hearing officer or State review official agrees that the parent's proposed change of placement is appropriate, responsibility shifts to the public agency to maintain that placement while appeal is pending. Ex. F.

61. The 25–26 FOFD is under appeal, and Plaintiff references that decision only for the 2025–2026 procedural posture, the IHO's favorable findings that DOE denied C.C. a FAPE, that iBRAIN was appropriate, and that pendency was determined in Parent's favor based on SRO Decision No. 25-150, while preserving review of the adverse equitable determinations Parent is appealing.

62. The 25–26 FOFD is referenced only for limited procedural and substantive facts helpful to the pending 2025–2026 posture.

63. The IHO in the 25–26 proceeding found that DOE denied C.C. a FAPE.

64. The IHO in the 25–26 proceeding found that iBRAIN was appropriate for C.C.

65. The IHO in the 25–26 proceeding made a pendency determination favorable to Parent based on SRO Decision No. 25-150.

66. The IHO in the 25–26 proceeding made adverse equitable determinations that Parent is appealing.

67. Parent filed a request for review concerning the adverse equitable determinations on or about February 17, 2026.

68. The 25–26 SRO appeal remains pending.

69. Extensions have been granted in the 25–26 SRO appeal over Parent's objections.

70. DOE has made no payment toward C.C.'s 2025–2026 iBRAIN tuition.

71. DOE has made no payment toward C.C.'s 2025–2026 Sisters transportation.

72. DOE's nonpayment during the pending 2025–2026 administrative appeal continues to operate as a practical self-stay of C.C.'s automatic pendency/status quo rights.

**B. Core Theory**

73. SRO Decision No. 25-150 is the central administrative decision in this action. Ex. C.

74. SRO Decision No. 25-150 serves two related functions.

75. First, SRO Decision No. 25-150 is a final, unappealed State-level administrative decision requiring DOE to directly fund C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation. Ex. C.

76. Second, SRO Decision No. 25-150 establishes C.C.'s iBRAIN-plus-Sisters-transportation status quo for the 2025–2026 proceeding. Exs. C, D, F.

77. Plaintiff does not seek review, reversal, or modification of SRO Decision No. 25-150.

78. SRO Decision No. 25-150 was favorable to Parent and unappealed by DOE.

79. Plaintiff seeks enforcement of SRO Decision No. 25-150.

80. Plaintiff also seeks relief preventing DOE or any Defendant from relying on earlier adverse, incomplete, superseded, or pending administrative treatment to avoid the tuition, transportation, late-fee, interest, or pendency consequences of SRO Decision No. 25-150.

81. The central enforcement decision in this action is SRO Decision No. 25-150, while the 25–26 FOFD supports the continuing pendency and procedural-delay allegations only to the extent it contains favorable findings and identifies the pending appeal posture.

82. The 25–26 FOFD is used only to support limited procedural and substantive facts, including that the IHO found DOE denied C.C. a FAPE, found iBRAIN appropriate, made a favorable pendency determination based on SRO Decision No. 25-150, and made adverse equitable determinations that Parent is appealing.

83. The central enforcement theory is that DOE lost at the SRO level for the 2024–2025 school year, did not appeal, did not obtain a stay, and nevertheless paid nothing.

84. The central pendency theory is that SRO Decision No. 25-150 established C.C.'s status quo, Parent invoked that status quo in the 2025–2026 DPC, DOE obtained no stay, and DOE nevertheless paid nothing for 2025–2026 pendency.

**C. No Preliminary-Injunction Posture**

85. Plaintiff does not ask this Court to create pendency.

86. C.C.'s pendency rights attached automatically by operation of 20 U.S.C. § 1415(j).

87. The IDEA's stay-put provision provides that, during the pendency of administrative and judicial proceedings, unless the parent and public agency agree otherwise, the child shall remain in the then-current educational placement. See 20 U.S.C. § 1415(j).

88. The implementing regulation likewise provides that, during the pendency of administrative or judicial proceedings regarding a DPC, unless the State or local agency

and parents agree otherwise, the child "must remain" in the current educational placement. See 34 C.F.R. § 300.518(a).

89. This action seeks enforcement of statutory and administrative obligations that already existed.

90. This action seeks enforcement of DOE's final and unappealed obligation under SRO Decision No. 25-150. Ex. C.

91. This action seeks enforcement of DOE's continuing obligation to maintain C.C.'s iBRAIN-plus-Sisters-transportation status quo during the pending 2025–2026 administrative and judicial proceedings. Exs. C, D, F.

92. Plaintiff does not plead this action as a traditional preliminary-injunction application requiring discretionary creation of rights.

93. Plaintiff does not ask the Court to decide pendency on a blank slate.

94. Plaintiff seeks enforcement and declarations confirming that DOE's obligations existed by operation of law, by operation of SRO Decision No. 25-150, and by operation of Parent's invocation of C.C.'s continuing status quo in the 2025–2026 DPC. Exs. C, D, F.

**D. No Appeal / No Stay / No Payment**

95. DOE did not appeal SRO Decision No. 25-150.

96. DOE did not seek or obtain a stay of SRO Decision No. 25-150.

97. DOE did not obtain any order modifying, vacating, or reversing SRO Decision No. 25-150.

98. DOE has made no payment toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

99. DOE has made no payment toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

100. DOE has made no payment toward C.C.'s 2025–2026 iBRAIN tuition.

101. DOE has made no payment toward C.C.'s 2025–2026 Sisters transportation.

102. DOE has not funded late fees, interest, or related contract-based maintained-placement costs caused by its nonpayment.

103. DOE's nonpayment is continuing.

104. This action is not advisory.

105. DOE has not implemented SRO Decision No. 25-150.

106. DOE has not funded the 2024–2025 tuition or transportation ordered by SRO Decision No. 25-150.

107. DOE has not funded C.C.'s 2025–2026 pendency tuition or transportation.

108. Late fees and interest remain live.

109. The 2025–2026 SRO appeal remains pending.

110. Procedural-denial-of-FAPE claims remain live.

111. OATH and NYSED/OSR delay claims remain live.

112. Plaintiff's claims for attorneys' fees and costs remain live.

## II. Jurisdiction and Venue

### A. IDEA Jurisdiction

113. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the IDEA, 20 U.S.C. § 1400 et seq., including 20 U.S.C. §§ 1415(i)(2)(A) and 1415(j).

114. Under 20 U.S.C. § 1415(i)(2)(A), a party aggrieved by findings and decisions made under the IDEA may bring a civil action in federal district court.

115. Plaintiff is aggrieved by DOE's failure to implement SRO Decision No. 25-150. Ex. C.

116. Plaintiff is aggrieved by DOE's failure to maintain C.C.'s pendency/status quo placement for the 2025–2026 school year. Exs. C, D, F.

117. Plaintiff is aggrieved by DOE's nonpayment of C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation ordered by SRO Decision No. 25-150. Ex. C.

118. Plaintiff is aggrieved by DOE's nonpayment of C.C.'s 2025–2026 iBRAIN tuition and Sisters transportation during the pending administrative proceeding. Exs. C, D, F.

119. Plaintiff is aggrieved by adverse or incomplete 2025–2026 administrative determinations currently under review, including adverse equitable determinations that Parent is appealing.

120. Plaintiff is aggrieved by DOE's failure to treat pendency as automatic.

121. Plaintiff is aggrieved by DOE's failure to convene legally compliant resolution meetings.

122. Plaintiff is aggrieved by OATH's hearing-timeline, extension, and pendency-delay practices as applied to C.C.

123. Plaintiff is aggrieved by NYSED/OSR's ongoing State-level review delay as applied to C.C.

124. Plaintiff also seeks direct enforcement of C.C.'s stay-put rights under 20 U.S.C. § 1415(j).

**B. Declaratory Relief**

125. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

126. An actual and justiciable controversy exists between the parties concerning DOE's obligation to implement SRO Decision No. 25-150.

127. An actual and justiciable controversy exists concerning whether SRO Decision No. 25-150 established C.C.'s pendency/status quo placement for 2025–2026.

128. An actual and justiciable controversy exists concerning whether DOE may withhold implementation based on nonpayment, administrative delay, payment processing, appeal posture, or lack of a new pendency order.

129. An actual and justiciable controversy exists concerning whether DOE's lack of privity with iBRAIN or Sisters defeats DOE's obligation to fund contract-based maintained-placement costs.

130. Plaintiff seeks declarations that SRO Decision No. 25-150 is final and binding.

131. Plaintiff seeks declarations that DOE was required to implement SRO Decision No. 25-150.

132. Plaintiff seeks declarations that SRO Decision No. 25-150 established C.C.'s status quo for 2025–2026 pendency.

133. Plaintiff seeks declarations that C.C.'s pendency/status quo placement includes iBRAIN tuition and Sisters transportation.

134. Plaintiff seeks declarations that DOE cannot self-stay pendency or final-order implementation through nonpayment, appeal posture, administrative delay, internal processing, documentation demands, or payment-processing delay.

135. Plaintiff seeks declarations that DOE's lack of privity with iBRAIN or Sisters does not defeat DOE's obligation to fund the placement costs required by the IDEA, SRO Decision No. 25-150, and C.C.'s pendency/status quo rights.

136. Plaintiff seeks declarations that no new IHO pendency order, DOE agreement, completion of the pending SRO appeal, or federal preliminary injunction was required before DOE had to maintain C.C.'s pendency/status quo placement.

137. Plaintiff seeks declarations that placement-setting findings establish C.C.'s pendency/status quo regardless of any pending or disputed equitable, remedial, direct-payment, late-fee, interest, or implementation issues.

**C. Civil Rights Jurisdiction and § 1983**

138. This Court has civil rights jurisdiction under 28 U.S.C. § 1343(a)(3).

139. Plaintiff asserts claims under 42 U.S.C. § 1983 seeking relief for deprivation, under color of state law, of rights secured by federal law.

140. DOE acts under color of state law.

141. Plaintiff asserts § 1983 and *Monell* claims against DOE based on DOE's policies, customs, practices, ratification, deliberate indifference, and failure to train or supervise concerning order-dependent, appeal-dependent, and iBRAIN/*Sisters-specific pendency* and implementation practices. See *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

142. DOE's policies, customs, and practices include treating automatic pendency as order-dependent.

143. DOE's policies, customs, and practices include treating final administrative decisions as payment-discretionary.

144. DOE's policies, customs, and practices include delaying implementation after final administrative decisions.

145. DOE's policies, customs, and practices include refusing or delaying iBRAIN tuition and Sisters transportation funding even where an SRO decision, DPC, contracts, and pendency materials identify the required placement.

146. DOE's policies, customs, and practices include allowing administrative delay, appeal posture, and payment-processing delay to operate as a practical self-stay.

147. DOE's policies, customs, and practices caused the violations of C.C.'s federal rights alleged herein.

**D. Supplemental Jurisdiction**

148. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law and state-regulatory issues because they form part of the same case or controversy as Plaintiff's federal IDEA, pendency, declaratory, § 1983, and enforcement claims.

149. Plaintiff's federal and related state-law issues arise from the same facts, DPCs, administrative proceedings, contracts, SRO Decision No. 25-150, implementation failures, pendency disputes, and nonpayment alleged herein.

150. Plaintiff's claims involve N.Y. Educ. Law § 4404 and 8 N.Y.C.R.R. § 200.5 because those provisions form part of New York's IDEA administrative framework.

151. Plaintiff seeks relief against NYSED, OSR, Commissioner Rosa, OATH, and OATH officials only for violations of federal law, including the IDEA, and for prospective federal-law relief where available.

152. Plaintiff does not seek an order compelling State or State-related defendants to comply with state law as such.

153. References to state regulations and state administrative procedures are included because they inform the federal IDEA framework, the administrative record, the timeliness and procedural context of Plaintiff's federal claims, and the relief available under federal law.

**E. Venue**

154. Venue is proper in this District under 28 U.S.C. § 1391.

155. A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

156. DOE is responsible for providing C.C. a FAPE, implementing pendency, convening resolution meetings, participating in due process, and funding the administrative relief and pendency placement at issue.

157. OATH administered C.C.'s impartial hearing proceedings, including OATH SEHD Case No. 277479 and OATH SEHD Case No. 296761.

158. NYSED and OSR administer the State-level review process challenged in this action.

159. C.C.'s iBRAIN placement, Parent's enforcement claims, and Defendants' challenged nonimplementation practices arise from New York City special education obligations and affect C.C.'s educational rights in this District.

160. Venue is therefore proper in the Southern District of New York.

## III. Parties

**A. Plaintiff Parent**

161. Plaintiff Mery Moreta is C.C.'s parent and natural guardian.

162. Plaintiff brings this action individually and on behalf of C.C., a student with a disability.

163. Plaintiff participated in C.C.'s educational planning, placement decisions, DPCs, administrative proceedings, and efforts to secure DOE's funding and maintenance of C.C.'s pendency/status quo placement.

164. Plaintiff filed or caused to be filed C.C.'s 2024–2025 DPC, assigned OATH SEHD Case No. 277479. Ex. A.

165. Plaintiff filed or caused to be filed C.C.'s 2025–2026 DPC, assigned OATH SEHD Case No. 296761. Ex. D.

166. Plaintiff timely invoked C.C.'s pendency/status quo rights.

167. Plaintiff seeks enforcement of SRO Decision No. 25-150 and enforcement of C.C.'s continuing 2025–2026 pendency/status quo rights.

**B. Student C.C.**

168. C.C. is a student with a disability under the IDEA and New York law.

169. C.C. is identified by initials only in this Complaint.

170. C.C. has complex brain-based, physical, communication, and access needs.

171. The 2024–2025 DPC describes C.C. as a student with a brain-based disorder resulting in severe impairments in cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing, and speech. Ex. A.

172. The 2024–2025 DPC describes C.C. as non-verbal and non-ambulatory. Ex. A.

173. The 2024–2025 DPC describes C.C. as having intensive management needs requiring individualized attention and intervention throughout the school day. Ex. A.

174. The 2024–2025 DPC describes C.C. as requiring a small, structured classroom, a 1:1 direct-instruction model, a modified environment, a full-time 1:1 paraprofessional,

assistance with activities of daily living, and an extensive regimen of related services. Ex. A.

175. C.C. requires specialized transportation to access the educational placement. Exs. A, D.

176. C.C.'s pendency/status quo package includes iBRAIN tuition and Sisters transportation. Exs. A, C, D, F.

177. The current C.C. maintained-placement package pleaded in this Complaint is iBRAIN tuition and Sisters transportation.

178. C.C.'s maintained-placement package pleaded in this action consists of iBRAIN tuition and Sisters transportation, as reflected in the DPCs, contracts, SRO Decision No. 25-150, and Parent's 2025–2026 pendency submissions.

**C. DOE and Chancellor**

179. Defendant New York City Department of Education is the local educational agency responsible for providing C.C. a FAPE under the IDEA and New York law.

180. DOE is responsible for developing and implementing appropriate IEPs for students with disabilities.

181. DOE is responsible for convening legally compliant resolution meetings after receiving DPCs.

182. DOE is responsible for participating in impartial due process proceedings.

183. DOE is responsible for implementing pendency under 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518, and N.Y. Educ. Law § 4404(4)(a).

184. DOE is responsible for implementing final administrative decisions issued under the IDEA and New York Education Law.

185. DOE is responsible for implementing SRO Decision No. 25-150. Ex. C.

186. DOE is responsible for funding C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation ordered by SRO Decision No. 25-150. Ex. C.

187. DOE is responsible for maintaining C.C.'s 2025–2026 pendency/status quo placement, including iBRAIN tuition and Sisters transportation. Exs. C, D, F.

188. Defendant Kamar H. Samuels is sued in his official capacity as Chancellor of the New York City Department of Education.

189. Chancellor Samuels is responsible, in his official capacity, for DOE's implementation systems, special education policies, pendency implementation practices, final-order implementation practices, payment systems, and compliance with federal special education law.

190. Plaintiff seeks declaratory, prospective, enforcement, and other available federal-law relief against DOE and Chancellor Samuels concerning DOE implementation, DOE policy and practice, DOE payment systems, and DOE's refusal or failure to timely maintain C.C.'s placement.

**D. OATH Defendants**

191. Defendant Office of Administrative Trials and Hearings administers New York City's impartial hearing system for IDEA due process complaints.

192. OATH assigns IHOs to due process proceedings.

193. OATH schedules proceedings.

194. OATH administers compliance dates.

195. OATH tracks extensions.

196. OATH controls the hearing forum in which C.C.'s DPCs were assigned, scheduled, delayed, extended, and decided.

197. OATH administered C.C.'s 2024–2025 proceeding, OATH SEHD Case No. 277479. Exs. A, B.

198. OATH administered C.C.'s 2025–2026 proceeding, OATH SEHD Case No. 296761. Exs. D, E.

199. OATH is named because its hearing administration, timeline handling, extension practices, and failure to ensure prompt pendency treatment are part of Plaintiff's as-applied delay and procedural-denial-of-FAPE claims.

200. Defendant Vilda Vera Mayuga is sued in her official capacity as Commissioner and Chief Administrative Law Judge of OATH.

201. Defendant Noel R. Garcia is sued in his official capacity as Deputy Commissioner of OATH's Special Education Hearings Division.

202. Defendant William Stewart is sued in his official capacity as Assistant Commissioner of OATH's Special Education Hearings Division.

203. Plaintiff seeks prospective federal-law relief against OATH and the OATH official-capacity defendants concerning hearing administration, timeline practices, extension practices, pendency-delay practices, and the administration of IDEA due process proceedings in a manner that does not nullify C.C.'s automatic pendency rights.

**E. NYSED / OSR / Commissioner**

204. Defendant New York State Education Department is the State educational agency responsible for IDEA general supervision in New York.

205. NYSED is responsible for ensuring that New York's due process and State-level review systems comply with federal law.

206. Defendant Office of State Review is part of NYSED.

207. OSR administers State-level appeals from IHO decisions.

208. OSR administers SRO appeal procedures, extension requests, review records, and SRO decision timelines.

209. OSR administered the appeal that resulted in SRO Decision No. 25-150. Ex. C.

210. OSR is administering the pending 2025–2026 SRO appeal from the 25–26 FOFD.

211. The pending 2025–2026 SRO appeal has been delayed by extensions granted over Parent's objections.

212. DOE has paid nothing for C.C.'s 2025–2026 pendency/status quo placement while the 2025–2026 SRO appeal remains pending.

213. NYSED and OSR are named because their administration of State-level review, appeal timing, extension practice, decision issuance, and general-supervision obligations are relevant to Plaintiff's claims that administrative delay cannot be used to nullify C.C.'s automatic pendency rights.

214. Defendant Betty A. Rosa is sued in her official capacity as Commissioner of Education of the State of New York.

215. Commissioner Rosa is responsible, in her official capacity, for NYSED's general-supervision obligations and for the State's administration of IDEA-compliant due process and review systems.

216. Plaintiff seeks prospective federal-law relief against NYSED, OSR, and Commissioner Rosa concerning State-level review delay, extension practices, general supervision, and the administration of SRO review in a manner that does not allow DOE nonpayment to operate as a practical stay of C.C.'s automatic pendency rights.

## IV. IDEA, FAPE, IEP, and Administrative Review Framework

### A. IDEA's Purpose

217. Congress enacted the IDEA to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") designed to meet their unique needs and prepare them for further education, employment, and independent living. See 20 U.S.C. § 1400(d)(1)(A).

218. The Supreme Court has recognized that the IDEA is a comprehensive federal statute designed to protect the educational rights of children with disabilities and to ensure meaningful access to appropriate special education and related services. See *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 179–84 (1982).

219. A FAPE must be tailored to the child's unique needs through special education and related services, and the IDEA's procedural framework exists to ensure that parents can participate meaningfully in the development, challenge, review, and enforcement of the child's educational program. See id. at 205–06.

220. The Supreme Court has further clarified that a child's educational program must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 580 U.S. 386, 399 (2017).

221. The IDEA authorizes parents to seek public funding for an appropriate unilateral placement where the public agency fails to provide a FAPE. See *Forest Grove School District v. T.A.,* 557 U.S. 230, 246–47 (2009).

222. Related services are part of the IDEA's FAPE guarantee where necessary to assist a child with a disability to benefit from special education. See *Cedar Rapids Community School District v. Garret F. ex rel. Charlene F.,* 526 U.S. 66, 73–79 (1999).

223. For C.C., the IDEA's purpose is directly implicated because C.C. requires an intensive special education program, related services, assistive technology, 1:1 support, and specialized transportation to access and benefit from C.C.'s educational placement. Exs. A, D.

224. Defendants' failure to implement SRO Decision No. 25-150 and failure to maintain C.C.'s pendency/status quo placement frustrate the IDEA's central purpose of ensuring continuity, access, and enforceable educational protections for students with disabilities. Exs. C, D, F.

**B. FAPE and IEP Requirements**

225. The individualized education program ("IEP") is the "centerpiece" of the IDEA's education-delivery system. See *Endrew F.*, 580 U.S. at 391; *T.K. v. New York City Department of Education*, 810 F.3d 869, 875 (2d Cir. 2016).

226. The IEP is the mechanism through which special education and related services are tailored to the unique needs of a particular child. See 20 U.S.C. § 1414(d); *Rowley*, 458 U.S. at 181–82.

227. To provide a FAPE, an IEP must be reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances. See Endrew F., 580 U.S. at 399.

228. The IDEA does not require school districts to maximize a child's potential, but it requires more than a program calculated to provide merely trivial or de minimis progress. See id. at 402–04.

229. The Second Circuit has recognized that the IDEA requires an educational program that is likely to produce progress, not regression, and that affords the child an opportunity for more than trivial advancement. *See M.O. v. New York City Department of Education*, 793 F.3d 236, 239 (2d Cir. 2015); T.K., 810 F.3d at 875.

230. For students with complex disabilities, a FAPE may require not only classroom instruction, but also related services, assistive technology, 1:1 paraprofessional support, extended school year programming, extended school day programming, and specialized transportation.

231. For C.C., the 2024–2025 DPC describes intensive educational, communication, physical, and access needs, including the need for a small structured classroom, 1:1 direct instruction, a modified environment, 1:1 paraprofessional support, assistance with activities of daily living, related services, and specialized transportation. Ex. A.

232. For C.C., the 2025–2026 DPC again identified iBRAIN and Sisters transportation as the educational and access package Parent invoked for pendency/status quo purposes. Ex. D.

233. The SRO in Decision No. 25-150 determined that DOE was required to directly fund C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation in accordance with Parent's enrollment and transportation agreements. Ex. C.

234. The 2025–2026 pendency claim flows from that placement-setting decision and Parent's invocation of the same iBRAIN-plus-Sisters-transportation status quo in the 2025–2026 DPC. Exs. C, D, F.

**C. Due Process and Review**

235. The IDEA provides parents with procedural safeguards, including the right to file a DPC concerning the identification, evaluation, educational placement, or provision of a FAPE to a child with a disability. See 20 U.S.C. § 1415(b)(6), (b)(7); 34 C.F.R. § 300.507.

236. When a parent files a DPC, the local educational agency must convene a resolution meeting within fifteen days of receiving notice of the complaint unless the parties waive the meeting in writing or agree to mediation. See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(a).

237. The resolution meeting is intended to provide the parent and school district an opportunity to discuss the complaint and the facts underlying the complaint so that the school district has an opportunity to resolve the dispute. See 20 U.S.C. § 1415(f)(1)(B)(i); 34 C.F.R. § 300.510(a)(2).

238. If the matter is not resolved during the resolution period, the parent is entitled to an impartial due process hearing before an impartial hearing officer ("IHO"). See 20 U.S.C. § 1415(f); 34 C.F.R. § 300.511.

239. Federal regulations require that a final decision be reached and mailed to the parties not later than forty-five days after expiration of the resolution period or adjusted resolution period, subject only to legally proper extensions. See 34 C.F.R. § 300.515(a).

240. New York has adopted a two-tier administrative review system in which an IHO conducts the impartial hearing and issues a findings of fact and decision ("FOFD"), and an aggrieved party may appeal the IHO's decision to a State Review Officer ("SRO"). See N.Y. Educ. Law § 4404; 8 N.Y.C.R.R. § 200.5.

241. After the SRO issues a decision, an aggrieved party may seek judicial review in state or federal court. See 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)(a).

242. The Second Circuit has described this administrative framework as requiring parents first to file a DPC, proceed through an impartial hearing, and then, in New York, seek SRO review before judicial review where exhaustion applies. See *C.F. ex rel. R.F. v. New York City Department of Education,* 746 F.3d 68, 73 (2d Cir. 2014).

243. Pendency operates during these administrative and judicial proceedings to preserve the student's then-current educational placement unless the parent and public agency agree otherwise. See 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).

244. Parent invoked the due process system for C.C. for the 2024–2025 school year through the DPC assigned OATH SEHD Case No. 277479. Ex. A.

245. Parent invoked the due process system for C.C. for the 2025–2026 school year through the DPC assigned OATH SEHD Case No. 296761. Ex. D.

246. In both proceedings, Parent requested a resolution meeting and preserved Parent's position that, if DOE failed to hold or participate in a legally compliant resolution meeting, the IHO should begin the impartial-hearing timeline immediately. Exs. A, B, D, E.

247. In both proceedings, Parent invoked C.C.'s pendency/status quo rights. Exs. A, D, F.

248. DOE's failure to convene legally compliant resolution meetings, OATH's failure to ensure timely proceedings, and NYSED/OSR's delayed State-level review are part of the procedural and delay-related claims pleaded in this action. Exs. B, E.

## V. Pendency / Stay-Put Legal Framework

### A. Pendency Is Automatic

249. The IDEA's pendency provision, also known as the stay-put provision, provides that during the pendency of administrative and judicial proceedings, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement. See 20 U.S.C. § 1415(j).

250. The federal implementing regulation likewise provides that, during the pendency of any administrative or judicial proceeding regarding a DPC, unless the State or local agency and the parents agree otherwise, the child "must remain" in the current educational placement. See 34 C.F.R. § 300.518(a).

251. New York law similarly protects the child's pendency placement during administrative and judicial proceedings. See N.Y. Educ. Law § 4404(4)(a).

252. The Supreme Court has recognized that the stay-put provision reflects Congress's judgment that children with disabilities should remain in their then-current educational placement while disputes are resolved. See *Honig v. Doe*, 484 U.S. 305, 323 (1988).

253. The stay-put provision functions as an automatic statutory protection designed to preserve educational stability and prevent unilateral disruption of the child's placement. See *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

254. The Second Circuit has described stay-put as a powerful protective measure designed to prevent disruption of the child's education throughout the dispute process. See *Mackey ex rel. Thomas M. v. Board of Education for Arlington Central School District,* 386 F.3d 158, 160–61 (2d Cir. 2004).

255. During the pendency of proceedings, the stay-put provision maintains the educational status quo and ensures continuity of services while the dispute is resolved. *See T.M. ex rel. A.M. v. Cornwall Central School District*, 752 F.3d 145, 152 (2d Cir. 2014).

256. The stay-put obligation is enforceable because the IDEA requires the district to continue funding whatever placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete. See *Doe v. East Lyme Board of Education,* 790 F.3d 440, 452 (2d Cir. 2015).

257. Pendency is automatic; it does not depend on DOE's consent, internal approval, payment processing, or discretionary implementation.

258. Parent need not prove traditional preliminary-injunction factors before enforcing C.C.'s pendency rights because the statutory stay-put protection operates automatically.

259. For C.C., Parent invoked pendency in the 2024–2025 DPC, again invoked pendency in the 2025–2026 DPC, and administratively briefed that SRO Decision No. 25-150 established the operative status quo for 2025–2026. Exs. A, D, F.

**B. No Separate Pendency Order Is Required**

260. DOE's obligation to maintain C.C.'s pendency/status quo placement did not depend on issuance of a new IHO pendency order in the 2025–2026 proceeding.

261. DOE's obligation did not depend on DOE agreement.

262. DOE's obligation did not depend on completion of the pending SRO appeal.

263. DOE's obligation did not depend on a federal preliminary injunction.

264. The statutory obligation arose from 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518(a), SRO Decision No. 25-150, and Parent's invocation of C.C.'s continuing status quo in the 2025–2026 DPC. Exs. C, D, F.

265. Orders issued by an IHO, SRO, or federal court may confirm, declare, or enforce pendency, but they do not create the statutory right.

266. *In Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF Nos. 34, 35, 38 (S.D.N.Y.), DOE advanced substantially the same theory Plaintiff challenges here: that DOE was not required to implement pendency funding unless DOE independently agreed with the parents' assertion of pendency or an IHO issued a specific pendency order directing implementation.

267. In *Crespo*, DOE argued that it "conducts an independent analysis of the student's entitlement to pendency and determines how best to provide those pendency services." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 34 (S.D.N.Y.).

268. DOE also argued in *Crespo* that "[w]hen the parties cannot agree on the appropriate scope of pendency or the appropriate provider of pendency services, such disputes are typically resolved by an IHO." Id.

269. Judge Vargas rejected that theory. In summarizing DOE's position, the Court explained: "The thrust of DOE's argument is that, until it affirmatively agrees to pendency placement at iBRAIN, it has no obligation to implement pendency services based upon the prior SRO decisions." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

270. Judge Vargas then rejected DOE's position in unequivocal terms, holding that "DOE's position is unsupported by the statute, caselaw, and the governing regulations." Id.

271. Judge Vargas further explained that DOE's interpretation would allow DOE to withhold all funding during disputes, stating: "DOE effectively argues that its authority to determine how a student's then-current educational program is to be provided at public

expense during the pendency of proceedings means that it can choose to withhold all payments for a student's education." Id.

272. Judge Vargas rejected that position and concluded that DOE was obligated to fund the students' pendency placements. Id.

273. The *Crespo* Court also rejected the substance of DOE's litigation position, stating: "Given how insubstantial many of DOE's arguments are, the Court is concerned that DOE is not operating in good faith with respect to these students." Id.

274. Judge Vargas declared iBRAIN to be the students' pendency placement and ordered DOE to fund the placement retroactive to the filing of the due process complaints. Id.

275. The reasoning in *Crespo* applies directly here. DOE cannot delay or withhold C.C.'s pendency funding while DOE conducts its own "independent analysis," waits for a new IHO pendency order, contests Sisters transportation, or treats the pending administrative process as a basis to avoid automatic stay-put implementation.

276. In Zvi D., the Second Circuit recognized that stay-put is, in effect, an automatic preliminary injunction preserving the child's current placement. 694 F.2d at 906.

277. *In M.R. v. Ridley School District*, the Third Circuit explained that a court does not separately determine whether the pendency placement is appropriate; rather, the obligation arises from the protected status quo during the dispute-resolution process. 744 F.3d 112, 123–24 (3d Cir. 2014).

278. *In Spilsbury v. District of Columbia*, the court recognized federal stay-put enforcement where parents sought and obtained IDEA stay-put protection directly from federal court. 307 F. Supp. 2d 22, 27 n.1 (D.D.C. 2004).

279. *In C.P. by Curtis v. Kankakee Community Unit School District*, the court recognized that a parent may seek stay-put relief in federal court without exhausting administrative remedies because § 1415(j) protects the child during the administrative process itself. No. 05-2145, 2005 WL 8163374, at *2–3 (C.D. Ill. Aug. 29, 2005).

280. DOE cannot use the absence of a newly issued IHO pendency order to avoid maintaining C.C.'s iBRAIN-plus-Sisters-transportation status quo for 2025–2026.

281. DOE cannot treat administrative delay or the pending SRO appeal as a substitute for a stay.

282. DOE cannot claim that an IHO pendency order was required before DOE had to fund C.C.'s pendency placement when the IDEA, its implementing regulations, SRO Decision No. 25-150, Parent's 2025–2026 DPC, and Parent's Supplemental Pendency Brief already identified the operative status quo. Exs. C, D, F.

283. DOE cannot avoid automatic pendency by converting its own disagreement with Parent's asserted placement, its own objections to iBRAIN or Sisters, or its own internal implementation preferences into a precondition for funding.

284. As Judge Vargas recognized in *Crespo*, DOE's theory that it has no obligation to implement pendency services until it affirmatively agrees to the parents' pendency position is "unsupported by the statute, caselaw, and the governing regulations." *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

285. DOE did not obtain a stay.

286. DOE paid nothing for C.C.'s 2025–2026 pendency placement.

287. DOE's refusal to fund C.C.'s 2025–2026 iBRAIN tuition and Sisters transportation therefore reflects the same type of order-dependent, self-staying pendency theory rejected in *Crespo*.

**C. Then-Current Educational Placement**

288. The stay-put inquiry requires identification of the child's then-current educational placement. See *Doe v. East Lyme*, 790 F.3d at 452.

289. A student's then-current educational placement may be the placement described in the student's most recently implemented IEP. See id.

290. A student's then-current educational placement may also be the operative placement actually functioning when the administrative proceeding commenced. See id.

291. A student's then-current educational placement may also be the placement at the time of the previously implemented IEP. See id.

292. The Second Circuit has recognized that pendency requires identifying the student's then-current educational placement and preserving that placement during the proceedings. See *Ventura de Paulino v. New York City Department of Education,* 959 F.3d 519, 532 (2d Cir. 2020).

293. The Second Circuit has also recognized that stay-put maintains the educational status quo and ensures continuity of services during the dispute. See *T.M.*, 752 F.3d at 152.

294. A final or favorable administrative placement decision may establish the operative status quo for stay-put purposes. See *Student X v. New York City Department of Education*, No. 07-CV-2316 (NGG) (RER), 2008 WL 4890440, at *23 (E.D.N.Y. Oct. 30, 2008); Letter to Hampden, 49 IDELR 197.

295. For C.C., SRO Decision No. 25-150 established the iBRAIN-plus-Sisters-transportation placement that Parent invoked for 2025–2026. Exs. C, D, F.

296. Parent's 2025–2026 DPC expressly invoked pendency at iBRAIN and sought public funding for tuition and transportation. Ex. D.

297. Parent's 2025–2026 Supplemental Pendency Brief further argued that SRO Decision No. 25-150 established C.C.'s operative status quo for pendency purposes. Ex. F.

298. DOE has not identified any later agreed-upon placement replacing the iBRAIN-plus-Sisters-transportation status quo.

299. Parent has not agreed to any change in C.C.'s pendency/status quo placement.

**D. Pendency Includes Funding**

300. Maintaining a private-school pendency placement necessarily includes funding that placement.

301. In *Zvi D.*, the Second Circuit held that implicit in maintaining the status quo is the requirement that the school district continue to finance the educational placement. 694 F.2d at 906.

302. Cutting off public funding for a private pendency placement would amount to a unilateral change in placement prohibited by the IDEA. See id.

303. In *Mackey*, the Second Circuit recognized that the stay-put provision prevents disruption of the child's education throughout the dispute process. 386 F.3d at 160–61.

304. *In Doe v. East Lyme*, the Second Circuit held that the stay-put provision requires the school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete. 790 F.3d at 452.

305. *In M.R. v. Ridley School District*, the Third Circuit explained that financing goes hand-in-hand with pendent private-school placement. 744 F.3d at 123.

306. *In Susquenita School District v. Raelee S. ex rel. Heidi S.*, the Third Circuit recognized that, without interim financial support, a parent's choice to maintain the child in the placement determined appropriate by the State would amount to no choice at all. 96 F.3d 78, 87 (3d Cir. 1996).

307. In *Mendez v. Banks*, the Second Circuit recognized the proposition that funding goes hand-in-hand with placement in the pendency context. 65 F.4th 56, 62–63 (2d Cir. 2023).

308. DOE therefore cannot maintain C.C.'s pendency/status quo placement while refusing to fund the iBRAIN tuition and Sisters transportation that make up that placement.

309. DOE's failure to fund C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation violates SRO Decision No. 25-150 and DOE's implementation obligations. Ex. C.

310. DOE's failure to fund C.C.'s 2025–2026 iBRAIN tuition and Sisters transportation violates C.C.'s automatic pendency/status quo rights. Exs. C, D, F.

311. DOE's nonpayment shifts the cost of C.C.'s publicly funded placement to Parent and providers, thereby undermining the IDEA's stay-put protection.

**E. Transportation Is Part of the Maintained Placement**

312. Transportation is a related service under the IDEA. See 20 U.S.C. § 1401(26); 34 C.F.R. § 300.34(a).

313. Federal regulations define transportation as a related service and include travel to and from school and between schools, travel in and around school buildings, and specialized equipment when required to provide transportation for a child with a disability. See 34 C.F.R. § 300.34(c)(16).

314. New York regulations likewise define related services to include transportation and other supportive services necessary for a student with a disability to benefit from special education. See 8 N.Y.C.R.R. § 200.1(ww).

315. New York Education Law §§ 4401 and 4402 recognize the State and local obligations to provide special education programs and services, including related services necessary for students with disabilities.

316. The Supreme Court has recognized that related services required to assist a child with a disability to benefit from special education are part of the public agency's FAPE obligations. See *Cedar Rapids*, 526 U.S. at 73–79.

317. In *Irving Independent School District v. Tatro*, the Supreme Court recognized that supportive services required for a child to access special education may fall within the IDEA's related-services obligation. 468 U.S. 883, 890–95 (1984).

318. Courts have recognized that transportation may be required where necessary for a student to access an appropriate educational program. See *Donald B. v. Board of School Commissioners,* 117 F.3d 1371, 1374–75 (11th Cir. 1997).

319. For C.C., Sisters transportation is not collateral to the educational placement.

320. For C.C., Sisters transportation is necessary for C.C. to access iBRAIN.

321. The 2024–2025 DPC and pendency materials identified special transportation as daily, round-trip transportation for all school days through Sisters. Ex. A.

322. The 2025–2026 DPC and pendency materials again identified Sisters transportation as part of C.C.'s pendency/status quo package. Ex. D.

323. SRO Decision No. 25-150 ordered DOE to directly fund transportation expenses for the 2024–2025 school year in accordance with Parent's transportation agreement. Ex. C.

324. C.C.'s 2025–2026 pendency/status quo placement therefore includes Sisters transportation as part of the maintained placement. Exs. C, D, F.

325. DOE cannot maintain C.C.'s placement while refusing to fund the transportation necessary for C.C. to access iBRAIN.

**F. SRO/IHO Decisions Can Establish Status Quo**

326. Federal regulations provide that, if a hearing officer in a due process hearing conducted by the State educational agency or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of stay-put. See 34 C.F.R. § 300.518(d).

327. In *School Committee of Burlington v. Department of Education*, the Supreme Court recognized that an administrative decision in favor of the parents' private placement would appear to constitute agreement by the State to the change of placement. 471 U.S. 359, 372 (1985).

328. In *Board of Education of Pawling Central School District v. Schutz*, the Second Circuit held that once the parents' challenge to a proposed IEP succeeds, consent to the private placement is implied by law and the requirements of the stay-put provision become the responsibility of the school district. 290 F.3d 476, 483–84 (2d Cir. 2002).

329. In *Ventura de Paulino*, the Second Circuit recognized that a placement can become the pendency placement where an IHO or SRO finds the parents' new placement appropriate by adjudicating the IEP dispute in the parents' favor. 959 F.3d at 532.

330. Courts in this Circuit have similarly recognized that a final administrative decision in favor of the parents can establish a student's pendency placement. See *Student X*, 2008 WL 4890440, at *23; Letter to Hampden, 49 IDELR 197.

331. SRO Decision No. 25-150 was a State-level administrative decision in favor of Parent concerning C.C.'s iBRAIN placement and Sisters transportation for the 2024–2025 school year. Ex. C.

332. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s iBRAIN tuition and Sisters transportation in accordance with Parent's enrollment and transportation agreements. Ex. C.

333. SRO Decision No. 25-150 therefore constitutes State agreement to C.C.'s iBRAIN-plus-Sisters-transportation placement for stay-put purposes.

334. Parent invoked that status quo in the 2025–2026 DPC and Supplemental Pendency Brief. Exs. D, F.

**G. SRO Decision No. 25-150 Established 25–26 Pendency**

335. SRO Decision No. 25-150 modified the IHO's January 27, 2025 FOFD by reversing the portions that found DOE offered C.C. a FAPE, found iBRAIN inappropriate, and denied direct tuition and transportation funding. Ex. C.

336. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s iBRAIN tuition and transportation expenses for the 2024–2025 school year in accordance with the enrollment and transportation agreements. Ex. C.

337. DOE did not appeal SRO Decision No. 25-150.

338. DOE did not obtain a stay of SRO Decision No. 25-150.

339. DOE did not obtain a reversal of SRO Decision No. 25-150.

340. Parent filed the 2025–2026 DPC on July 2, 2025 and invoked pendency at iBRAIN with Sisters transportation. Ex. D.

341. Parent's 2025–2026 Supplemental Pendency Brief specifically argued that SRO Decision No. 25-150 established C.C.'s pendency/status quo placement for 2025–2026. Ex. F.

342. DOE's anticipated position that it may withhold funding until it agrees with Parent's pendency assertion or until a new IHO pendency order issues is the same theory Judge Vargas rejected in *Crespo*. There, after full briefing and a hearing, the Court rejected DOE's claim that it could withhold pendency services based on its own disagreement with the parents' asserted placement, found DOE's position unsupported by the IDEA, regulations, and caselaw, and expressed concern that DOE was not operating in good faith with respect to the students. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

343. SRO Decision No. 25-150 became C.C.'s pendency/status quo anchor for 2025–2026.

344. DOE's obligation to maintain that placement included funding C.C.'s 2025–2026 iBRAIN tuition of $364,266.50 and Sisters transportation of $235,662.00. Ex. D.

345. DOE has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition.

346. DOE has paid nothing toward C.C.'s 2025–2026 Sisters transportation.

347. DOE's nonpayment continues to violate C.C.'s automatic pendency/status quo rights.

## VI. SRO Decision No. 25-150 Fully Sustained Parent's *Burlington/Carter* Claim and Established C.C.'s Status Quo

### A. *Burlington/Carter* Framework

348. In unilateral-placement cases, courts apply the framework established by *School Committee of Burlington v. Department of Education*, 471 U.S. 359 (1985), and *Florence County School District Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993).

349. Under the *Burlington/Carter* framework, the first question is whether the school district denied the student a FAPE.

350. The second question is whether the parent's unilateral placement was appropriate.

351. The third question is whether equitable considerations support the requested relief.

352. The Second Circuit applies this framework in IDEA unilateral-placement disputes. See *Gagliardo v. Arlington Central School District*, 489 F.3d 105, 111–12 (2d Cir. 2007).

353. The parent's unilateral placement need not meet every requirement imposed on public schools, but it must provide educational instruction specially designed to meet the child's unique needs, supported by services necessary to permit the child to benefit from instruction. See *Frank G. v. Board of Education of Hyde Park*, 459 F.3d 356, 365 (2d Cir. 2006).

354. The Second Circuit has applied the *Burlington/Carter* framework in cases involving New York City special education disputes and unilateral placements. See *T.K. v. New York City Department of Education,* 810 F.3d 869, 875–76 (2d Cir. 2016); *Hardison v. Board of Education of the Oneonta City School District,* 773 F.3d 372, 386–87 (2d Cir. 2014).

**B. SRO Decision No. 25-150 Granted Parent Full Relief Under *Burlington/Carter***

355. SRO Decision No. 25-150 resolved the 2024–2025 placement dispute fully in Parent's favor. Ex. C.

356. SRO Decision No. 25-150 reversed the adverse portions of the January 27, 2025 FOFD. Ex. C.

357. SRO Decision No. 25-150 reversed the IHO's finding that DOE offered C.C. a FAPE for the 2024–2025 school year. Ex. C.

358. SRO Decision No. 25-150 reversed the IHO's finding that iBRAIN was not an appropriate unilateral placement for C.C. for the 2024–2025 school year. Ex. C.

359. SRO Decision No. 25-150 reversed the IHO's denial of direct funding for C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation. Ex. C.

360. SRO Decision No. 25-150 determined that DOE denied C.C. a FAPE for the 2024–2025 school year. Ex. C.

361. SRO Decision No. 25-150 determined that iBRAIN was an appropriate unilateral placement for C.C. for the 2024–2025 school year. Ex. C.

362. SRO Decision No. 25-150 determined that Parent was entitled to relief for C.C.'s 2024–2025 tuition and transportation expenses. Ex. C.

363. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s tuition at iBRAIN and transportation expenses for the 2024–2025 school year in accordance with Parent's enrollment and transportation agreements. Ex. C.

364. Accordingly, unlike cases where the administrative posture leaves unresolved equitable or remedial questions, SRO Decision No. 25-150 granted Parent complete relief necessary to enforce C.C.'s 2024–2025 tuition and transportation funding.

**C. SRO Decision No. 25-150 Established C.C.'s iBRAIN-Plus-Sisters Transportation Status Quo**

365. A favorable administrative decision ordering public funding of a unilateral placement establishes the student's status quo for stay-put purposes. See 34 C.F.R. § 300.518(d); *School Committee of Burlington v. Department of Education*, 471 U.S. 359, 372 (1985); *Board of Education of Pawling Central School District v. Schutz*, 290 F.3d 476, 483–84 (2d Cir. 2002).

366. Once the parent's challenge succeeds and the State agrees to the private placement through the administrative process, consent to that placement is implied by law and the school district becomes responsible for maintaining the placement under the stay-put provision. See *Schutz*, 290 F.3d at 483–84.

367. SRO Decision No. 25-150 is a State-level administrative decision in Parent's favor. Ex. C.

368. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s iBRAIN tuition and Sisters transportation in accordance with Parent's enrollment and transportation agreements. Ex. C.

369. SRO Decision No. 25-150 therefore established C.C.'s iBRAIN-plus-Sisters transportation placement as the operative status quo for pendency purposes. Exs. C, D, F.

370. Parent invoked that status quo in the 2025–2026 DPC. Ex. D.

371. Parent again invoked that status quo in the 2025–2026 Supplemental Pendency Brief. Ex. F.

372. DOE did not appeal SRO Decision No. 25-150.

373. DOE did not obtain a stay of SRO Decision No. 25-150.

374. DOE did not obtain a reversal, vacatur, or modification of SRO Decision No. 25-150.

375. DOE cannot dispute C.C.'s 2025–2026 pendency/status quo by ignoring the final, unappealed SRO decision that fully sustained Parent's 2024–2025 claim and ordered direct funding.

**D. Application to C.C.'s 2024–2025 Enforcement Claim and 2025–2026 Pendency Claim**

376. For 2024–2025, Plaintiff seeks enforcement of SRO Decision No. 25-150. Ex. C.

377. Plaintiff does not seek review, reversal, or modification of SRO Decision No. 25-150.

378. Plaintiff seeks enforcement because DOE did not appeal, did not obtain a stay, and paid nothing.

379. DOE remains obligated to directly fund C.C.'s 2024–2025 iBRAIN tuition in the amount of $337,124.20. Exs. A, C.

380. DOE remains obligated to directly fund C.C.'s 2024–2025 Sisters transportation in the amount of $220,993.00. Exs. A, C.

381. For 2025–2026, Plaintiff seeks enforcement of C.C.'s automatic continuing pendency/status quo rights based on SRO Decision No. 25-150. Exs. C, D, F.

382. Parent filed the 2025–2026 DPC on July 2, 2025 and invoked pendency at iBRAIN with Sisters transportation. Ex. D.

383. Parent's 2025–2026 Supplemental Pendency Brief specifically argued that SRO Decision No. 25-150 established C.C.'s pendency/status quo placement for 2025–2026. Ex. F.

384. DOE's anticipated position that it may withhold funding until it agrees with Parent's pendency assertion or until a new IHO pendency order issues is the same theory Judge Vargas rejected in *Crespo*. There, after full briefing and a hearing, the Court rejected DOE's claim that it could withhold pendency services based on its own disagreement

with the parents' asserted placement, found DOE's position unsupported by the IDEA, regulations, and caselaw, and expressed concern that DOE was not operating in good faith with respect to the students. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

385. DOE's obligation to maintain C.C.'s 2025–2026 pendency/status quo placement includes funding C.C.'s 2025–2026 iBRAIN tuition of $364,266.50 and Sisters transportation of $235,662.00. Ex. D.

386. DOE has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition.

387. DOE has paid nothing toward C.C.'s 2025–2026 Sisters transportation.

388. DOE's nonpayment continues to violate C.C.'s automatic pendency/status quo rights.

389. The 25–26 FOFD remains under appeal and is referenced for the favorable findings and pendency determination supporting Plaintiff's 2025–2026 pendency claim, while Parent preserves review of the adverse equitable determinations.

390. The 25–26 FOFD is referenced only for the helpful facts that the IHO found DOE denied C.C. a FAPE, found iBRAIN appropriate, made a pendency determination favorable to Parent, and made adverse equitable determinations that Parent is appealing.

391. Parent's appeal of adverse equitable determinations in the separate 2025–2026 administrative proceeding does not disturb DOE's obligation to enforce SRO Decision No. 25-150 or to maintain C.C.'s 2025–2026 pendency/status quo based on that final, unappealed SRO decision.

## VII. Finality of SRO Decision No. 25-150 and No Automatic Stay

### A. SRO Decisions Are Final and Binding When Issued

392. New York Education Law provides that any proceeding to review a final determination or order of an SRO must be commenced within four months after the determination to be reviewed becomes final and binding on the parties. See N.Y. Educ. Law § 4404(3)(a).

393. The IDEA permits an aggrieved party to bring a civil action following administrative review. See 20 U.S.C. § 1415(i)(2)(A).

394. The availability of judicial review does not mean that an SRO decision is unenforceable until the judicial-review period expires.

395. In New York, an SRO decision becomes final and binding when issued, subject to the right of an aggrieved party to seek judicial review within the applicable limitations period. See N.Y. Educ. Law § 4404(3)(a).

396. In *Piazza v. Florida Union Free School District*, the court recognized that New York's limitations period runs from the date the SRO decision becomes final. 777 F. Supp. 2d 669, 688 (S.D.N.Y. 2011).

397. In *Antkowiak ex rel. Antkowiak v. Ambach*, the Second Circuit recognized the binding effect of unappealed administrative orders under the IDEA's administrative framework. 838 F.2d 635, 641 (2d Cir. 1988).

398. In *L.V. v. New York City Department of Education*, Judge Preska recognized that final administrative orders are legal obligations and that DOE's only lawful course is to implement them. No. 03 Civ. 9917 (LAP), 2021 WL 663718, at *12–16 (S.D.N.Y. Feb. 18, 2021).

399. SRO Decision No. 25-150 issued on September 29, 2025. Ex. C.

400. SRO Decision No. 25-150 became final and binding when issued. Ex. C.

401. DOE did not appeal SRO Decision No. 25-150.

402. DOE did not obtain a stay of SRO Decision No. 25-150.

403. DOE has no lawful basis to withhold implementation of SRO Decision No. 25-150.

**B. DOE Did Not Appeal SRO Decision No. 25-150**

404. DOE did not appeal SRO Decision No. 25-150.

405. DOE did not commence any proceeding seeking judicial review of SRO Decision No. 25-150.

406. DOE did not seek a stay of SRO Decision No. 25-150.

407. DOE did not obtain a stay of SRO Decision No. 25-150.

408. DOE did not obtain a reversal, modification, or vacatur of SRO Decision No. 25-150.

409. DOE has no appeal posture, stay, reversal, modification, vacatur, or court order justifying nonimplementation of SRO Decision No. 25-150.

410. DOE was required to directly fund C.C.'s 2024–2025 iBRAIN tuition and Sisters transportation in accordance with SRO Decision No. 25-150. Ex. C.

411. DOE nevertheless has paid nothing toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

412. DOE nevertheless has paid nothing toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

**C. DOE Cannot Self-Stay**

413. DOE cannot grant itself a stay by refusing to pay.

414. DOE cannot grant itself a stay by delaying implementation.

415. DOE cannot grant itself a stay through internal processing.

416. DOE cannot grant itself a stay by invoking documentation review, payment processing, or administrative delay.

417. DOE cannot grant itself a stay by relying on a pending or delayed administrative process.

418. DOE also cannot grant itself a stay by manufacturing a purported "pendency dispute" and then insisting that payment need not occur until an IHO issues a new pendency order.

419. In *Crespo*, DOE advanced that same position in the iBRAIN pendency context, arguing that when DOE disagrees with the parent's asserted pendency placement or provider, the dispute is typically resolved by an IHO before implementation. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 34 (S.D.N.Y.).

420. Judge Vargas rejected DOE's position as unsupported by the governing law and recognized that DOE's theory would permit DOE to withhold all payments for a student's education during the pendency of proceedings. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

421. Judge Vargas further stated that, "[g]iven how insubstantial many of DOE's arguments are," the Court was "concerned that DOE is not operating in good faith with respect to these students." Id.

422. That reasoning applies to C.C. DOE cannot rely on its own disagreement with Parent's iBRAIN-plus-Sisters-transportation pendency position to withhold all pendency funding.

423. DOE cannot invoke the absence of a new IHO pendency order as a lawful basis to pay nothing.

424. DOE cannot use administrative delay, payment-processing delay, or disagreement with iBRAIN/Sisters as a practical stay of C.C.'s automatic pendency rights.

425. In *Susquenita*, the Third Circuit recognized that a district's financial obligations with respect to the pendent placement are immediate and may not be deferred until the close of litigation. 96 F.3d at 87.

426. In *M.R. v. Ridley School District*, the Third Circuit recognized that the school district's obligation to fund a pendent private placement is well established and follows from State agreement concerning the placement. 744 F.3d at 118–19, 123.

427. In *Clovis Unified School District v. California Office of Administrative Hearings*, the Ninth Circuit recognized that, once an administrative ruling identifies a placement as appropriate, the district may be obligated to pay for that placement pending conclusion of judicial proceedings. 903 F.2d 635, 641 (9th Cir. 1990).

428. Federal regulation confirms that when a hearing officer or State review official agrees with the parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for stay-put purposes. See 34 C.F.R. § 300.518(d).

429. DOE's nonpayment after SRO Decision No. 25-150 is not a lawful stay.

430. DOE's nonpayment during the pending 2025–2026 administrative appeal is not a lawful stay.

431. DOE has paid nothing toward C.C.'s 2024–2025 SRO-ordered tuition or transportation.

432. DOE has paid nothing toward C.C.'s 2025–2026 pendency tuition or transportation.

433. DOE's nonpayment operates as an unlawful practical self-stay of C.C.'s rights.

434. DOE's position is particularly improper because SRO Decision No. 25-150 already established the placement and funding obligation for the 2024–2025 school year, DOE did not appeal that decision, Parent invoked the same iBRAIN-plus-Sisters-transportation

status quo for 2025–2026, and DOE has not obtained any stay, reversal, modification, or court order excusing implementation. Exs. C, D, F.

435. Under these circumstances, DOE's refusal to fund C.C.'s 2025–2026 pendency placement is not merely delay; it is the same order-dependent and self-staying theory that Judge Vargas rejected in *Crespo* as unsupported by the statute, caselaw, and governing regulations. *Crespo v. Aviles-Ramos*, No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

**D. Federal Register / USDOE Explanation of § 300.518(d)**

436. The United States Department of Education has explained that the regulation now codified at 34 C.F.R. § 300.518(d) does not limit either party's right to judicial review.

437. Instead, where a hearing officer or State review official agrees with the parent that the proposed change of placement is appropriate, the regulation shifts responsibility for maintaining the parent's proposed placement to the public agency while appeal is pending. See Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 64 Fed. Reg. 12,406, 12,615 (Mar. 12, 1999).

438. Parent relied on this principle in the 2025–2026 Supplemental Pendency Brief. Ex. F.

439. Parent argued that SRO Decision No. 25-150 became final and binding when issued on September 29, 2025, and that DOE's four-month appeal window did not create an automatic stay. Ex. F.

440. Parent further argued that 34 C.F.R. § 300.518(d) shifted responsibility to DOE to maintain C.C.'s iBRAIN-plus-Sisters-transportation placement. Ex. F.

441. DOE did not appeal SRO Decision No. 25-150.

442. DOE did not obtain a stay.

443. DOE therefore had no lawful basis to refuse implementation of SRO Decision No. 25-150 or to refuse maintenance of C.C.'s 2025–2026 pendency/status quo placement.

## VIII. Exhaustion Is Unnecessary and Administrative Remedies Are Inadequate

### A. Pendency and Final-Order Enforcement May Be Pursued Directly in Federal Court

444. Plaintiff may pursue federal enforcement of C.C.'s stay-put rights and final administrative obligations without waiting for delayed administrative processes to conclude.

445. The IDEA expressly authorizes civil actions by parties aggrieved by administrative findings and decisions. See 20 U.S.C. § 1415(i)(2)(A).

446. The IDEA separately protects the child's stay-put placement during the pendency of administrative and judicial proceedings. See 20 U.S.C. § 1415(j).

447. The stay-put right exists to protect the child during the administrative process, not only after that process ends.

448. In *Zvi D.*, the Second Circuit recognized that stay-put functions as an automatic injunction preserving the child's current placement. 694 F.2d at 906.

449. In *Spilsbury*, the court recognized federal stay-put enforcement during the administrative process. 307 F. Supp. 2d at 27 n.1.

450. In *C.P. by Curtis*, the court recognized that exhaustion does not bar a federal action seeking stay-put protection because § 1415(j) is designed to protect the child while the due process proceeding is pending. 2005 WL 8163374, at *2–3.

451. In *Honig*, the Supreme Court recognized the importance of stay-put as a statutory protection against unilateral disruption of the student's placement. 484 U.S. at 323.

452. In *Mackey*, the Second Circuit described stay-put as a powerful protective measure preventing disruption during the dispute process. 386 F.3d at 160–61.

453. *In M.R. v. Ridley School District*, the Third Circuit recognized that stay-put funding obligations arise from the protected status quo and are enforceable while proceedings continue. 744 F.3d at 118–24.

454. Plaintiff seeks enforcement of SRO Decision No. 25-150, which DOE did not appeal and did not stay. Ex. C.

455. Plaintiff also seeks enforcement of C.C.'s automatic 2025–2026 pendency/status quo rights during the pending administrative appeal. Exs. C, D, F.

456. Requiring Plaintiff to await further delayed administrative proceedings before seeking federal enforcement would defeat the purpose of stay-put.

**B. Exhaustion Would Defeat the Purpose of Stay-Put**

457. Exhaustion is unnecessary where requiring further administrative process would defeat the purpose of the right being enforced.

458. The purpose of stay-put is to maintain the student's educational status quo during the proceedings.

459. The injury is the failure to maintain the placement during the proceedings.

460. Requiring Parent to wait through delayed administrative or State-level review before enforcing C.C.'s automatic pendency rights would nullify the right.

461. DOE's nonpayment continues while the 2025–2026 SRO appeal remains pending.

462. The 2025–2026 SRO appeal has been delayed by extensions granted over Parent's objections.

463. DOE has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition during the pending appeal.

464. DOE has paid nothing toward C.C.'s 2025–2026 Sisters transportation during the pending appeal.

465. DOE's nonpayment shifts the financial burden of C.C.'s publicly funded status quo to Parent and providers.

466. Additional administrative delay would compound the harm by allowing DOE's nonpayment to continue functioning as a practical self-stay.

467. Plaintiff therefore need not exhaust further delayed administrative processes before seeking federal enforcement of C.C.'s pendency/status quo rights.

**C. IHOs and SROs Cannot Enforce DOE Payment Compliance**

468. IHOs and SROs may decide IDEA disputes and issue administrative decisions.

469. IHOs and SROs cannot hold DOE in contempt.

470. IHOs and SROs cannot supervise DOE's payment implementation.

471. IHOs and SROs cannot compel DOE to issue payment in the manner available to this Court.

472. IHOs and SROs cannot provide the full federal enforcement relief requested in this action.

473. IHOs and SROs cannot remedy systemic DOE payment practices, OATH timeline practices, or NYSED/OSR review-delay practices in the manner available through this federal action.

474. *Courts in this District have recognized limitations on* the authority of administrative officers to enforce orders or remedy systemic problems. See *Rutherford v. Florida Union*

*Free School District,* No. 16-CV-9778 (KMK), 2019 WL 1437823, at *28–29 (S.D.N.Y. Mar. 29, 2019).

475. In *King v. Pine Plains Central School District*, the court recognized that administrative hearing officers generally do not have authority to set new policy or alter existing policy. 918 F. Supp. 772, 781 (S.D.N.Y. 1996).

476. The Second Circuit has recognized that exhaustion is not required where adequate remedies are not reasonably available or where the wrongs alleged could not be corrected through the administrative process. See *Cave v. East Meadow Union Free School District,* 514 F.3d 240, 249 (2d Cir. 2008).

477. In *J.Z. v. New York City Department of Education*, the court recognized that exhaustion may be excused where systemic policy is at stake and the administrative officer lacks power to correct the violation. 281 F. Supp. 3d 352, 362 (S.D.N.Y. 2017).

478. In *L.V.*, Judge Preska recognized the need for federal enforcement where DOE failed to implement binding administrative obligations. 2021 WL 663718, at *12–16.

479. Plaintiff seeks relief that administrative officers cannot provide, including enforcement of payment obligations, declarations concerning DOE self-stay practices, relief concerning OATH and NYSED/OSR delay practices, and contract-based maintained-placement costs including late fees and interest.

480. Plaintiff therefore need not rely on IHOs or SROs to enforce DOE payment compliance before seeking relief from this Court.

**D. Exhaustion Is Futile for Delay and Systemic-Practice Claims**

481. Exhaustion is futile where the complaint challenges systemic or as-applied practices that administrative officers cannot correct.

482. Exhaustion is futile where delay itself is the injury.

483. Exhaustion is futile where additional administrative process would compound the harm rather than remedy it.

484. Plaintiff challenges DOE practices of treating pendency as order-dependent, final administrative decisions as payment-discretionary, and administrative delay as a practical self-stay.

485. Plaintiff also challenges DOE's practice of forcing parents to litigate automatic pendency repeatedly by taking the position that DOE need not implement pendency unless DOE agrees with the parent's asserted placement or an IHO issues a new pendency order.

486. That practice was squarely addressed in *Crespo*, where *Judge Vargas rejected DOE's claim* that it had no obligation to implement pendency services based on prior SRO decisions unless DOE affirmatively agreed to the pendency placement at iBRAIN. *Crespo v. Aviles-Ramos,* No. 25-cv-7563 (JAV), ECF No. 38 (S.D.N.Y.).

487. Judge Vargas described DOE's position as unsupported by the IDEA, caselaw, and regulations, and expressed concern that DOE was not operating in good faith with respect to the students. Id.

488. The *Crespo* ruling confirms that requiring Parent to remain in the administrative process while DOE withholds all pendency funding would not provide an adequate administrative remedy. It would merely allow DOE's rejected pendency theory to continue harming C.C. during the very period stay-put is designed to protect.

489. Plaintiff challenges DOE practices of delaying or refusing iBRAIN tuition and Sisters transportation funding even when a DPC, pendency materials, contracts, SRO decision, and implementation materials identify the placement and costs.

490. Plaintiff challenges OATH's hearing-timeline, extension, and pendency-delay practices as applied to C.C.'s 2024–2025 and 2025–2026 proceedings.

491. Plaintiff challenges NYSED/OSR's State-level review delay and extension practices as applied to the pending 2025–2026 appeal.

492. Administrative officers cannot provide complete relief for those systemic and as-applied delay practices.

493. Requiring further exhaustion would allow DOE's nonpayment to continue while the very system whose delay is challenged proceeds further.

494. Exhaustion is therefore unnecessary and futile for Plaintiff's pendency enforcement, SRO enforcement, implementation, delay, and systemic-practice claims.

495. Plaintiff properly seeks federal enforcement, declaratory relief, and prospective relief from this Court.

## IX. 2024–2025 DPC, Timeline Preservation, and Administrative Proceeding

### A. 2024–2025 Ten-Day Notice

496. On June 14, 2024, Parent sent DOE a Ten-Day Notice concerning C.C.'s 2024–2025 extended school year program and placement. Ex. A.

497. In the June 14, 2024 Ten-Day Notice, Parent rejected DOE's proposed IEP, program, and placement for C.C. Ex. A.

498. Parent advised DOE that C.C. would remain at iBRAIN for the 2024–2025 extended school year. Ex. A.

499. Parent advised DOE that iBRAIN was an appropriate unilateral placement for C.C. Ex. A.

500. Parent requested that DOE maintain C.C.'s status quo through stay-put. Ex. A.

501. Parent requested that DOE fully implement C.C.'s stay-put placement at the start of the 2024–2025 extended school year. Ex. A.

502. Parent identified iBRAIN as a specialized program for students with brain injury or brain-based disorders. Ex. A.

503. Parent's Ten-Day Notice placed DOE on notice before the start of the 2024–2025 extended school year that Parent disputed DOE's proposed program and placement, that C.C. would continue at iBRAIN, and that Parent sought public funding and stay-put protection. Ex. A.

**B. 2024–2025 DPC**

504. Parent's 2024–2025 DPC was dated July 2, 2024. Ex. A.

505. Parent's July 11, 2024 email to IHO Sohmer-Rosenbaum stated that the 2024–2025 DPC had been filed on July 5, 2024. Ex. B.

506. The 2024–2025 matter was assigned OATH SEHD Case No. 277479. Ex. A.

507. The 2024–2025 DPC alleged that DOE denied C.C. a FAPE for the 2023–2024 and 2024–2025 school years. Ex. A.

508. The 2024–2025 DPC challenged DOE's proposed program and placement for C.C. Ex. A.

509. The 2024–2025 DPC requested an immediate resolution meeting. Ex. A.

510. Under 20 U.S.C. § 1415(f)(1)(B)(i) and 34 C.F.R. § 300.510(a)(1), DOE was required, within fifteen days of receiving notice of Parent's DPC and before initiating the impartial hearing, to convene a resolution meeting with Parent and the relevant members of the IEP team who had specific knowledge of the facts identified in the DPC.

511. The 2024–2025 DPC requested that, if DOE failed to hold or participate in a legally compliant resolution meeting within fifteen days, the IHO begin the impartial-hearing timeline immediately. Ex. A.

512. Under 34 C.F.R. § 300.510(b)(5), if an LEA fails to hold the resolution meeting within fifteen days of receiving notice of a parent's DPC or fails to participate in the resolution meeting, the parent may seek IHO intervention to begin the due process hearing timeline.

513. Under 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b), if the school district fails to hold the resolution meeting within fifteen days of receipt of the DPC or fails to participate in the resolution meeting, the parent may seek the intervention of the IHO to begin the impartial hearing timeline.

514. The 2024–2025 DPC specifically invoked 34 C.F.R. § 300.510(b)(5) and 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b) for the requested timeline consequence if DOE failed to hold or participate in a timely resolution meeting. Ex. A.

515. The 2024–2025 DPC asserted that pendency was automatic under 20 U.S.C. § 1415(j). Ex. A.

516. The 2024–2025 DPC requested public funding and direct payment for C.C.'s iBRAIN tuition. Ex. A.

517. The 2024–2025 DPC requested public funding and direct payment for C.C.'s Sisters transportation. Ex. A.

518. The 2024–2025 DPC attached a pendency form. Ex. A.

519. The 2024–2025 DPC attached a proposed pendency order. Ex. A.

520. The 2024–2025 DPC attached Parent's iBRAIN enrollment contract. Ex. A.

521. The 2024–2025 DPC attached Parent's Sisters transportation contract. Ex. A.

522. The 2024–2025 DPC therefore gave DOE notice of the placement, providers, requested funding, pendency position, contracts, and timeline relief Parent sought for C.C. Ex. A.

**C. 2024–2025 Pendency Form**

523. The 2024–2025 pendency form attached to the DPC identified C.C.'s pendency basis as the operative placement. Ex. A.

524. The pendency form identified iBRAIN as C.C.'s pendency placement. Ex. A.

525. The pendency form identified iBRAIN as a twelve-month program. Ex. A.

526. The pendency form sought direct payment of full tuition to iBRAIN pursuant to Parent's enrollment contract. Ex. A.

527. The pendency form identified special transportation as part of C.C.'s pendency package. Ex. A.

528. The pendency form listed special transportation as daily, round-trip transportation for all school days through Sisters. Ex. A.

529. The pendency form therefore identified the precise placement and transportation components DOE was required to maintain during the 2024–2025 proceeding. Ex. A.

530. DOE had notice from the 2024–2025 DPC and pendency form that C.C.'s asserted status quo included iBRAIN tuition and Sisters transportation. Ex. A.

**D. July 11, 2024 Email to IHO**

531. On July 11, 2024, Parent's counsel wrote to IHO Sohmer-Rosenbaum in OATH SEHD Case No. 277479. Ex. B.

532. Parent's July 11, 2024 email preserved Parent's expedited-timeline position. Ex. B.

533. Parent's July 11, 2024 email preserved Parent's pendency position. Ex. B.

534. Parent's counsel stated that the 2024–2025 DPC had been filed on July 5, 2024. Ex. B.

535. Parent's counsel stated that DOE was required to convene a resolution meeting within fifteen days of receiving notice of Parent's DPC. Ex. B.

536. Parent's counsel relied on 20 U.S.C. § 1415(f)(1)(B)(i), which requires the LEA to convene a meeting with the parent and relevant members of the IEP team who have specific knowledge of the facts identified in the DPC within fifteen days of receiving notice of the complaint, unless the parties agree in writing to waive the meeting or agree to mediation.

537. Parent's counsel relied on 34 C.F.R. § 300.510(a)(1), which requires the LEA to convene a resolution meeting within fifteen days of receiving notice of the parent's DPC and before initiating the due process hearing.

538. Parent's counsel preserved Parent's position that, if DOE failed to timely schedule and hold a resolution meeting, the resolution period should end on July 22, 2024. Ex. B.

539. Parent's counsel stated that the prehearing conference deadline should be August 5, 2024. Ex. B.

540. Parent's counsel stated that the compliance date should be August 31, 2024. Ex. B.

541. Parent's counsel relied on 34 C.F.R. § 300.510(b)(5), which permits the parent to seek IHO intervention to begin the due process hearing timeline if the LEA fails to hold the resolution meeting within fifteen days of receiving notice of the DPC or fails to participate in the resolution meeting.

542. Parent's counsel relied on 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b), which similarly permits the parent to seek IHO intervention to begin the impartial hearing timeline if the school district fails to hold the resolution meeting within fifteen days of receipt of the DPC or fails to participate in the resolution meeting.

543. Parent's counsel relied on 8 N.Y.C.R.R. § 200.5(j)(5), which governs the impartial hearing timeline and requires the IHO to render a decision not later than forty-five days after the applicable timeline begins, subject only to legally proper extensions.

544. Parent's counsel advised that Parent would make themselves available for hearing dates to stay within compliance. Ex. B.

545. Parent's counsel requested that DOE provide its pendency program and placement immediately. Ex. B.

546. Parent's counsel alternatively requested that DOE agree to Parent's pendency position and draft pendency order. Ex. B.

547. The July 11, 2024 email placed DOE and OATH on notice that Parent's timeline request was not merely a scheduling preference, but a demand grounded in the IDEA, its implementing regulations, and New York's impartial-hearing regulations. Ex. B.

548. The July 11, 2024 email provided contemporaneous notice to DOE and OATH that, if DOE failed to timely schedule and conduct a legally compliant resolution meeting, Parent requested immediate commencement of the hearing timeline under 34 C.F.R. § 300.510(b)(5) and 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b). Ex. B.

549. The July 11, 2024 email also provided contemporaneous notice that Parent was seeking immediate pendency implementation and would not accept administrative delay as a substitute for stay-put. Ex. B.

550. The July 11, 2024 email preserved Parent's objections to delay from the outset of the 2024–2025 proceeding and placed OATH and the IHO on notice of the legal basis for Parent's requested timeline and pendency relief. Ex. B.

**E. FOFD and Appeal**

551. The IHO issued a FOFD dated January 27, 2025 in OATH SEHD Case No. 277479.

552. The January 27, 2025 FOFD made adverse findings against Parent.

553. Parent appealed the adverse findings to OSR.

554. SRO Decision No. 25-150 issued on September 29, 2025. Ex. C.

555. SRO Decision No. 25-150 reversed the adverse portions of the January 27, 2025 FOFD. Ex. C.

556. SRO Decision No. 25-150 reversed the IHO's finding that DOE offered C.C. a FAPE for the 2024–2025 school year. Ex. C.

557. SRO Decision No. 25-150 reversed the IHO's finding that iBRAIN was not an appropriate unilateral placement for C.C. for the 2024–2025 school year. Ex. C.

558. SRO Decision No. 25-150 reversed the IHO's denial of direct tuition and transportation funding for the 2024–2025 school year. Ex. C.

559. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s tuition at iBRAIN for the 2024–2025 school year in accordance with Parent's enrollment agreement. Ex. C.

560. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s transportation expenses for the 2024–2025 school year in accordance with Parent's transportation agreement. Ex. C.

561. SRO Decision No. 25-150 is the final, favorable administrative decision Plaintiff seeks to enforce in this action. Ex. C.

## X. SRO Decision No. 25-150 — 24–25 Enforcement

**A. SRO Decision No. 25-150 Was Final and Unappealed**

562. SRO Decision No. 25-150 issued on September 29, 2025. Ex. C.

563. DOE did not appeal SRO Decision No. 25-150.

564. DOE did not commence any action seeking judicial review of SRO Decision No. 25-150.

565. DOE did not seek a stay of SRO Decision No. 25-150.

566. DOE did not obtain a stay of SRO Decision No. 25-150.

567. DOE did not obtain any order modifying SRO Decision No. 25-150.

568. DOE did not obtain any order vacating SRO Decision No. 25-150.

569. DOE did not obtain any order reversing SRO Decision No. 25-150.

570. SRO Decision No. 25-150 is not being challenged by Plaintiff in this action. Ex. C.

571. Plaintiff seeks enforcement of SRO Decision No. 25-150. Ex. C.

572. Because DOE did not appeal, did not obtain a stay, and did not obtain any modification, vacatur, or reversal, DOE has no lawful basis to withhold implementation of SRO Decision No. 25-150. Ex. C.

**B. SRO Decision No. 25-150 Ordered Direct Funding**

573. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s tuition at iBRAIN for the 2024–2025 school year in accordance with Parent's enrollment agreement. Ex. C.

574. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s transportation expenses for the 2024–2025 school year in accordance with Parent's transportation agreement. Ex. C.

575. SRO Decision No. 25-150 ordered direct funding for the precise placement and transportation costs Parent had placed before DOE and the administrative forum through the 2024–2025 DPC and attached contracts. Exs. A, C.

576. SRO Decision No. 25-150 is not being challenged in this action. Ex. C.

577. Plaintiff seeks enforcement of SRO Decision No. 25-150. Ex. C.

578. DOE did not appeal SRO Decision No. 25-150.

579. DOE did not obtain a stay of SRO Decision No. 25-150.

580. DOE did not obtain a reversal of SRO Decision No. 25-150.

581. DOE has made no payment toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

582. DOE has made no payment toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

583. DOE's failure to implement SRO Decision No. 25-150 is not an administrative merits dispute.

584. DOE's failure to implement SRO Decision No. 25-150 is nonimplementation of a final and unappealed administrative obligation.

585. DOE's nonimplementation requires federal enforcement.

**C. Parent Submitted Implementation Request**

586. On October 2, 2025, Parent, through counsel, submitted an NPSP implementation package to DOE's Implementation Unit.

587. The October 2, 2025 implementation package provided DOE with additional notice of the final administrative decision, the providers, the attendance, the affidavits, the invoice, and the documents necessary to process payment.

588. The October 2, 2025 implementation package included the filed DPC.

589. The October 2, 2025 implementation package included iBRAIN attendance documentation.

590. The October 2, 2025 implementation package included a tuition affidavit.

591. The October 2, 2025 implementation package included a Sisters affidavit.

592. The October 2, 2025 implementation package included a Sisters invoice.

593. The October 2, 2025 implementation package included the January 27, 2025 FOFD.

594. The October 2, 2025 implementation package included SRO Decision No. 25-150.

595. DOE therefore had notice of its obligation to implement SRO Decision No. 25-150 and the materials necessary to do so.

596. DOE nevertheless made no payment toward C.C.'s 2024–2025 iBRAIN tuition.

597. DOE nevertheless made no payment toward C.C.'s 2024–2025 Sisters transportation.

**D. 2024–2025 Amounts**

598. For the 2024–2025 school year, C.C.'s iBRAIN tuition was $337,124.20. Ex. A.

599. For the 2024–2025 school year, C.C.'s Sisters transportation was $220,993.00. Ex. A.

600. The total 2024–2025 principal amount for iBRAIN tuition and Sisters transportation was $558,117.20. Ex. A.

601. Late fees and interest are owed per the relevant contracts attached to the 2024–2025 DPC. Ex. A.

602. DOE has made no payment toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

603. DOE has made no payment toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

604. DOE has paid $0 toward the 2024–2025 principal amount ordered by SRO Decision No. 25-150.

605. DOE has not funded contract-based late fees or interest.

606. DOE has not funded related contract-based maintained-placement costs caused by its nonpayment.

607. The unpaid 2024–2025 principal amount is $558,117.20, exclusive of late fees, interest, attorneys' fees, costs, and other relief available by law. Exs. A, C.

**E. No 2024–2025 Payment**

608. DOE has made no payment toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

609. DOE has made no payment toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

610. DOE has not funded late fees.

611. DOE has not funded interest.

612. DOE has not funded related contract-based maintained-placement costs caused by its failure to timely implement SRO Decision No. 25-150.

613. DOE's nonpayment is continuing.

614. DOE's nonpayment shifts the financial burden of a final, unappealed administrative decision onto Parent, iBRAIN, and Sisters.

615. DOE's nonpayment deprives SRO Decision No. 25-150 of its practical effect unless this Court enforces it.

616. DOE's nonpayment also supports Plaintiff's claims for declaratory relief, enforcement, accounting, contract-based maintained-placement costs, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## XI. 2025–2026 DPC and Continuing Pendency

**A. 2025–2026 Ten-Day Notice**

617. On June 12, 2025, Parent sent DOE a Ten-Day Notice concerning C.C.'s 2025–2026 extended school year program and placement. Ex. D.

618. In the June 12, 2025 Ten-Day Notice, Parent disagreed with DOE's June 2025 IEP. Ex. D.

619. Parent disagreed with DOE's District 75 recommendation. Ex. D.

620. Parent advised DOE that C.C. would attend iBRAIN for the 2025–2026 extended school year. Ex. D.

621. Parent sought public funding for C.C.'s iBRAIN placement and transportation. Ex. D.

622. Parent invoked C.C.'s pendency/status quo rights. Ex. D.

623. Parent's June 12, 2025 Ten-Day Notice put DOE on notice before the 2025–2026 extended school year that Parent disputed DOE's proposed program and placement, intended to place C.C. at iBRAIN, and sought public funding and pendency/status quo protection. Ex. D.

**B. 2025–2026 DPC**

624. Parent filed the 2025–2026 DPC on July 2, 2025. Ex. D.

625. The 2025–2026 DPC was assigned OATH SEHD Case No. 296761. Ex. D.

626. The 2025–2026 DPC alleged that DOE denied C.C. a FAPE for the 2025–2026 school year. Ex. D.

627. The 2025–2026 DPC challenged DOE's proposed IEP, program, and placement for C.C. Ex. D.

628. The 2025–2026 DPC requested an immediate resolution meeting. Ex. D.

629. Under 20 U.S.C. § 1415(f)(1)(B)(i) and 34 C.F.R. § 300.510(a)(1), DOE was required, within fifteen days of receiving notice of Parent's DPC and before initiating the impartial hearing, to convene a resolution meeting with Parent and the relevant members of the IEP team who had specific knowledge of the facts identified in the DPC.

630. The 2025–2026 DPC requested timeline consequences if DOE failed to hold or participate in a legally compliant resolution meeting. Ex. D.

631. The 2025–2026 DPC requested that, if DOE failed to hold or participate in a legally compliant resolution meeting within fifteen days, the IHO begin the impartial-hearing timeline immediately. Ex. D.

632. Under 34 C.F.R. § 300.510(b)(5), if an LEA fails to hold the resolution meeting within fifteen days of receiving notice of a parent's DPC or fails to participate in the resolution meeting, the parent may seek IHO intervention to begin the due process hearing timeline.

633. Under 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b), if the school district fails to hold the resolution meeting within fifteen days of receipt of the DPC or fails to participate in the resolution meeting, the parent may seek the intervention of the IHO to begin the impartial hearing timeline.

634. The 2025–2026 DPC asserted pendency under 20 U.S.C. § 1415(j). Ex. D.

635. The 2025–2026 DPC stated that pendency is automatic. Ex. D.

636. The 2025–2026 DPC stated that pendency must be implemented without any application, motion, or showing. Ex. D.

637. The 2025–2026 DPC included Parent's iBRAIN contract. Ex. D.

638. The 2025–2026 DPC included Parent's Sisters transportation contract. Ex. D.

639. The 2025–2026 DPC requested direct funding of C.C.'s iBRAIN tuition. Ex. D.

640. The 2025–2026 DPC requested direct funding of C.C.'s Sisters transportation. Ex. D.

641. The 2025–2026 DPC again placed DOE on notice that Parent was invoking iBRAIN and Sisters transportation as C.C.'s publicly funded pendency/status quo package. Ex. D.

642. The 2025–2026 DPC preserved Parent's position that DOE was required to implement C.C.'s pendency/status quo automatically and immediately. Ex. D.

### C. August 11, 2025 Email to IHO

643. On August 11, 2025, Parent's counsel wrote to the IHO in OATH SEHD Case No. 296761. Ex. E.

644. Parent's August 11, 2025 email preserved Parent's timeline position at the beginning of the 2025–2026 proceeding. Ex. E.

645. Parent's August 11, 2025 email preserved Parent's pendency position at the beginning of the 2025–2026 proceeding. Ex. E.

646. Parent's counsel stated that the 2025–2026 DPC was filed on July 2, 2025. Ex. E.

647. Parent's counsel stated that DOE was required to convene a resolution meeting within fifteen days of receiving notice of Parent's DPC. Ex. E.

648. Parent's counsel relied on 20 U.S.C. § 1415(f)(1)(B)(i), which requires the LEA to convene a meeting with the parent and relevant members of the IEP team who have specific knowledge of the facts identified in the DPC within fifteen days of receiving notice of the complaint, unless the parties agree in writing to waive the meeting or agree to mediation.

649. Parent's counsel relied on 34 C.F.R. § 300.510(a)(1), which requires the LEA to convene a resolution meeting within fifteen days of receiving notice of the parent's DPC and before initiating the due process hearing.

650. Parent's counsel stated that the mandatory resolution-meeting date was July 17, 2025. Ex. E.

651. Parent's counsel stated that DOE failed to hold a resolution meeting within fifteen days of the DPC. Ex. E.

652. Parent's counsel stated that no resolution meeting had been held. Ex. E.

653. Parent's counsel requested that the hearing timeline begin immediately. Ex. E.

654. Parent's counsel relied on 34 C.F.R. § 300.510(b)(5), which permits the parent to seek IHO intervention to begin the due process hearing timeline if the LEA fails to hold the resolution meeting within fifteen days of receiving notice of the DPC or fails to participate in the resolution meeting.

655. Parent's counsel relied on 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b), which similarly permits the parent to seek IHO intervention to begin the impartial hearing timeline if the school district fails to hold the resolution meeting within fifteen days of receipt of the DPC or fails to participate in the resolution meeting.

656. Parent's counsel asserted that the adjusted compliance date should be August 31, 2025. Ex. E.

657. Parent's counsel relied on 8 N.Y.C.R.R. § 200.5(j)(5), which governs the impartial-hearing compliance timeline and requires a timely final decision subject only to legally proper extensions.

658. Under 34 C.F.R. § 300.515(a), a public agency must ensure that not later than forty-five days after expiration of the thirty-day resolution period, or the adjusted time periods described in 34 C.F.R. § 300.510(c), a final decision is reached in the hearing and a copy of the decision is mailed to each party.

659. Parent's counsel requested immediate pendency implementation. Ex. E.

660. Parent's August 11, 2025 email placed DOE and OATH on notice that Parent's timeline request was grounded in 20 U.S.C. § 1415(f)(1)(B)(i), 34 C.F.R. §§ 300.510(a)(1), 300.510(b)(5), and 300.515(a), and 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b), (j)(5). Ex. E.

661. Parent's August 11, 2025 email provided DOE and OATH notice that Parent was not waiving the resolution-meeting timeline, hearing timeline, compliance deadline, or pendency implementation rights. Ex. E.

662. Parent's August 11, 2025 email supports Plaintiff's claims concerning DOE's resolution-meeting failures, OATH's timeline administration, OATH's obligation to enforce the hearing timeline, and the prejudice caused by administrative delay while DOE paid nothing. Ex. E.

**D. 25–26 Supplemental Pendency Brief**

663. Parent submitted a 2025–2026 Supplemental Pendency Brief in OATH SEHD Case No. 296761. Ex. F.

664. In the 2025–2026 proceeding, DOE argued that SRO Decision No. 25-150 could not serve as the basis for C.C.'s pendency because DOE had four months to appeal the SRO decision. Ex. F.

665. Parent argued that DOE's position was wrong as a matter of law. Ex. F.

666. Parent argued that SRO Decision No. 25-150 was final and binding when issued on September 29, 2025. Ex. F.

667. Parent argued that the four-month appeal window did not create an automatic stay. Ex. F.

668. Parent argued that 34 C.F.R. § 300.518(d) applies. Ex. F.

669. Under 34 C.F.R. § 300.518(d), if a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's

parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for purposes of stay-put.

670. Parent relied on the United States Department of Education's Federal Register commentary explaining that § 300.518(d) "does not limit either party's right to seek appropriate judicial review," but "only shifts responsibility for maintaining the parent's proposed placement to the public agency while an appeal is pending in those instances in which the State hearing officer or State review official determines that the parent's proposed change of placement is appropriate." Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 64 Fed. Reg. 12,406, 12,615 (Mar. 12, 1999); Ex. F.

671. Parent argued that SRO Decision No. 25-150 established C.C.'s status quo. Ex. F.

672. Parent argued that SRO Decision No. 25-150 required DOE to fund C.C.'s pendency/status quo placement. Ex. F.

673. Parent argued that C.C.'s 2025–2026 pendency/status quo included iBRAIN tuition and Sisters transportation. Ex. F.

674. Parent's Supplemental Pendency Brief therefore preserved the exact legal position Plaintiff asserts here: SRO Decision No. 25-150 was final and binding when issued, was not stayed by the appeal window, established C.C.'s status quo, and required DOE to fund pendency. Ex. F.

**E. 2025–2026 FOFD and Pending Appeal**

675. The 2025–2026 FOFD is referenced for relevant procedural and substantive facts.

676. The IHO in the 2025–2026 proceeding found that DOE denied C.C. a FAPE.

677. The IHO in the 2025–2026 proceeding found that iBRAIN was appropriate for C.C.

678. The IHO in the 2025–2026 proceeding determined pendency in Parent's favor pursuant to SRO Decision No. 25-150.

679. The IHO in the 2025–2026 proceeding made adverse equitable determinations.

680. Parent appealed the adverse equitable determinations.

681. The 2025–2026 SRO appeal remains pending.

682. Extensions have been granted in the 2025–2026 SRO appeal over Parent's objections.

683. DOE has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition while the SRO appeal remains pending.

684. DOE has paid nothing toward C.C.'s 2025–2026 Sisters transportation while the SRO appeal remains pending.

685. Plaintiff preserves review of the adverse equitable determinations and any incomplete or adverse administrative treatment affecting pendency, contract-based costs, late fees, interest, and implementation.

686. DOE's nonpayment during the pending 2025–2026 SRO appeal continues to operate as a practical self-stay of C.C.'s pendency/status quo rights.

**F. 2025–2026 Amounts**

687. For the 2025–2026 school year, C.C.'s iBRAIN tuition was $364,266.50. Ex. D.

688. For the 2025–2026 school year, C.C.'s Sisters transportation was $235,662.00. Ex. D.

689. The total 2025–2026 principal amount for iBRAIN tuition and Sisters transportation was $599,928.50. Ex. D.

690. Late fees and interest are owed per the relevant contracts attached to the 2025–2026 DPC. Ex. D.

691. DOE has made no payment toward C.C.'s 2025–2026 iBRAIN tuition.

692. DOE has made no payment toward C.C.'s 2025–2026 Sisters transportation.

693. DOE has paid $0 toward C.C.'s 2025–2026 principal pendency/status quo package.

694. DOE has not funded contract-based late fees or interest.

695. DOE has not funded related contract-based maintained-placement costs caused by its nonpayment.

696. The unpaid 2025–2026 principal amount is $599,928.50, exclusive of late fees, interest, attorneys' fees, costs, and other relief available by law. Ex. D.

**G. No 2025–2026 Payment**

697. DOE has made no payment toward C.C.'s 2025–2026 iBRAIN tuition.

698. DOE has made no payment toward C.C.'s 2025–2026 Sisters transportation.

699. DOE has not funded late fees.

700. DOE has not funded interest.

701. DOE has not funded related contract-based maintained-placement costs caused by its failure to maintain C.C.'s pendency/status quo placement.

702. DOE's nonpayment has continued during the 2025–2026 administrative proceeding.

703. DOE's nonpayment has continued during the pending 2025–2026 SRO appeal.

704. DOE's nonpayment during the pending 2025–2026 administrative appeal operates as a practical self-stay.

705. DOE did not obtain a stay.

706. DOE did not obtain any order excusing it from maintaining C.C.'s pendency/status quo placement.

707. DOE's nonpayment shifts the cost of C.C.'s publicly funded pendency/status quo placement to Parent, iBRAIN, and Sisters.

708. DOE's nonpayment threatens the continuity of the educational and transportation package that stay-put is designed to protect.

709. DOE's nonpayment is continuing and requires federal enforcement.

## XII. Resolution Meeting and Hearing Timeline Framework

### A. DOE Must Convene Resolution Meeting Within 15 Days

710. The IDEA requires DOE to convene a resolution meeting within fifteen days of receiving notice of a parent's DPC unless the parties agree in writing to waive the meeting or agree to mediation. See 20 U.S.C. § 1415(f)(1)(B)(i); 34 C.F.R. § 300.510(a)(1).

711. Under 20 U.S.C. § 1415(f)(1)(B)(i), before the opportunity for an impartial due process hearing, the local educational agency must convene a meeting with the parents and the relevant members of the IEP Team who have specific knowledge of the facts identified in the complaint.

712. Under 34 C.F.R. § 300.510(a)(1), DOE was required to convene a resolution meeting with Parent and the relevant members of the IEP Team within fifteen days of receiving notice of Parent's DPC and before the initiation of the impartial due process hearing.

713. The resolution-meeting obligation is mandatory unless Parent and DOE agree in writing to waive the meeting or agree to use mediation. See 34 C.F.R. § 300.510(a)(3).

714. DOE was therefore required to convene a legally compliant resolution meeting after Parent filed the 2024–2025 DPC. Exs. A, B.

715. DOE was likewise required to convene a legally compliant resolution meeting after Parent filed the 2025–2026 DPC. Exs. D, E.

716. Parent preserved these resolution-meeting and timeline rights in the DPCs and in counsel's July 11, 2024 and August 11, 2025 emails to the IHOs. Exs. A, B, D, E.

**B. Required Resolution Meeting Participants and Meaningful Discussion**

717. A resolution meeting must include Parent and the relevant members of the IEP Team who have specific knowledge of the facts identified in the DPC. See 34 C.F.R. § 300.510(a)(1).

718. A resolution meeting must also include a representative of the public agency who has decision-making authority on behalf of the agency. See 34 C.F.R. § 300.510(a)(1)(i).

719. A resolution meeting may not include an attorney for DOE unless Parent is accompanied by an attorney. See 34 C.F.R. § 300.510(a)(1)(ii).

720. Federal regulations provide that Parent and DOE determine the relevant members of the IEP Team who attend the resolution meeting. See 34 C.F.R. § 300.510(a)(4).

721. DOE therefore cannot unilaterally select resolution-meeting attendees who lack specific knowledge of the facts identified in the DPC.

722. DOE also cannot satisfy the resolution-meeting requirement by sending participants who lack authority to resolve the matters raised in the DPC.

723. The United States Department of Education has explained that Parent and the LEA determine the relevant IEP Team members to attend the resolution meeting, that the LEA must convene a resolution meeting with the parent and relevant IEP Team members who have specific knowledge of the facts identified in the parent's DPC, and that the meeting must include a public agency representative with decision-making authority. See Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,701 (Aug. 14, 2006).

724. The United States Department of Education has further explained that LEAs and parents should cooperate in determining who will attend the resolution meeting because a

resolution meeting is unlikely to result in resolution of the dispute if the parties cannot agree on who should attend. See id.

725. A legally compliant resolution meeting must be capable of addressing the facts and issues raised in the DPC.

726. For C.C., that required meaningful discussion of DOE's proposed program and placement, iBRAIN, Sisters transportation, pendency, tuition, transportation funding, payment timing, and possible resolution. Exs. A, D.

727. DOE cannot satisfy the resolution-meeting requirement through a perfunctory meeting incapable of addressing pendency, tuition, transportation, payment timing, or meaningful resolution.

728. DOE's resolution-meeting obligations were directly implicated in both C.C.'s 2024–2025 and 2025–2026 proceedings because Parent expressly requested resolution meetings and demanded timeline consequences if DOE failed to comply. Exs. A, B, D, E.

**C. Failure to Hold or Participate Triggers Parent's Right to Start Hearing Timeline**

729. If DOE fails to hold the resolution meeting within fifteen days of receiving notice of the DPC, Parent may seek IHO intervention to begin the due process hearing timeline. See 34 C.F.R. § 300.510(b)(5).

730. If DOE fails to participate in the resolution meeting, Parent may likewise seek IHO intervention to begin the due process hearing timeline. See id.

731. New York regulations impose the same consequence: if the school district fails to hold the resolution meeting within fifteen days of receipt of the DPC or fails to participate in the resolution meeting, Parent may seek IHO intervention to begin the impartial hearing timeline. See 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b).

732. Parent expressly invoked these provisions in the 2024–2025 DPC. Ex. A.

733. Parent expressly invoked these provisions again in the 2025–2026 DPC. Ex. D.

734. Parent's July 11, 2024 email preserved Parent's position that, if DOE failed to timely schedule and hold a resolution meeting, the resolution period should end on July 22, 2024 and the compliance date should be August 31, 2024. Ex. B.

735. Parent's August 11, 2025 email preserved Parent's position that DOE failed to hold a resolution meeting within fifteen days of the 2025–2026 DPC and that the hearing timeline should begin immediately. Ex. E.

736. Parent's requests were based on federal and state law, not merely scheduling preference. Exs. B, E.

737. OATH and the IHOs had notice that Parent was invoking mandatory timeline consequences based on DOE's failure to comply with the resolution-meeting process. Exs. B, E.

**D. PHC and FOFD Deadlines**

738. Federal regulations require the public agency to ensure that, not later than forty-five days after expiration of the thirty-day resolution period or applicable adjusted resolution period, a final decision is reached in the hearing and a copy of the decision is mailed to each party. See 34 C.F.R. § 300.515(a).

739. New York regulations require the IHO to conduct a prehearing conference after appointment unless the IHO determines that a prehearing conference is unnecessary. See 8 N.Y.C.R.R. § 200.5(j)(3)(xi).

740. New York regulations require that the IHO render a decision not later than forty-five days after the applicable timeline begins, subject only to legally proper extensions. See 8 N.Y.C.R.R. § 200.5(j)(5).

741. These timelines are mandatory and are part of the IDEA's procedural safeguards.

742. These timelines cannot be treated as aspirational.

743. These timelines cannot be nullified by DOE's failure to convene a resolution meeting.

744. These timelines cannot be nullified by OATH's failure to enforce compliance dates.

745. These timelines cannot be nullified by administrative delay while DOE pays nothing.

746. Parent's July 11, 2024 email put OATH and the IHO on notice of Parent's calculation of the 2024–2025 timeline and compliance date. Ex. B.

747. Parent's August 11, 2025 email put OATH and the IHO on notice of Parent's calculation of the 2025–2026 timeline and compliance date. Ex. E.

748. OATH and the IHOs were therefore on notice from the beginning of both proceedings that Parent asserted enforceable federal and state timeline rights. Exs. B, E.

**E. Application to C.C.**

749. Parent preserved C.C.'s 2024–2025 timeline position at the start of the 2024–2025 proceeding. Ex. B.

750. Parent preserved C.C.'s 2025–2026 timeline position at the start of the 2025–2026 proceeding. Ex. E.

751. The July 11, 2024 email stated that the 2024–2025 DPC had been filed on July 5, 2024. Ex. B.

752. The July 11, 2024 email stated that, if DOE failed to timely schedule a resolution meeting, the resolution period should end on July 22, 2024. Ex. B.

753. The July 11, 2024 email stated that the prehearing conference deadline should be August 5, 2024. Ex. B.

754. The July 11, 2024 email stated that the compliance date should be August 31, 2024. Ex. B.

755. The July 11, 2024 email requested that DOE provide its pendency program and placement immediately or agree to Parent's pendency position and draft order. Ex. B.

756. The August 11, 2025 email stated that the 2025–2026 DPC had been filed on July 2, 2025. Ex. E.

757. The August 11, 2025 email stated that DOE failed to hold a resolution meeting within fifteen days of the 2025–2026 DPC. Ex. E.

758. The August 11, 2025 email stated that no resolution meeting had been held by the mandatory July 17, 2025 date. Ex. E.

759. The August 11, 2025 email requested that the hearing timeline begin immediately. Ex. E.

760. The August 11, 2025 email asserted an adjusted compliance date of August 31, 2025. Ex. E.

761. The August 11, 2025 email requested immediate pendency implementation. Ex. E.

762. Parent's emails placed DOE, OATH, and the IHOs on notice that Parent's timeline and pendency positions were grounded in the IDEA, federal regulations, and New York regulations. Exs. B, E.

763. Parent's emails further show that delay in both proceedings occurred despite Parent's early and repeated invocation of mandatory timeline protections. Exs. B, E.

**F. Timeline Violations Can Support Procedural Denial of FAPE**

764. Under the IDEA, a procedural violation may constitute a denial of FAPE if it impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decision-making process, or caused a deprivation of educational benefits. See 20 U.S.C. § 1415(f)(3)(E)(ii).

765. Federal regulations similarly provide that an IHO may find a child did not receive a FAPE based on procedural inadequacies if those inadequacies impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decision-making process, or caused a deprivation of educational benefit. See 34 C.F.R. § 300.513(a)(2).

766. New York regulations likewise recognize that a procedural inadequacy can support a finding that a student did not receive a FAPE where the inadequacy impeded the student's right to a FAPE, significantly impeded the parent's opportunity to participate, or caused a deprivation of educational benefits. See 8 N.Y.C.R.R. § 200.5(j)(4)(ii).

767. The Supreme Court has emphasized that the procedural protections of the IDEA are central to effectuating the statute's substantive guarantees. See *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 205–06 (1982).

768. Resolution-meeting failures and delayed hearing decisions are not merely technical violations where they prevent Parent from obtaining timely process and allow DOE's nonimplementation to continue.

769. In *Blackman v. District of Columbia*, the court held that failure to provide timely due process hearings was not an unimportant or technical violation of IDEA procedure, but

the denial of a fundamental component of the due process protections afforded by the statute. 277 F. Supp. 2d 71, 78–80 (D.D.C. 2003).

770. In *Blackman v. District of Columbia*, the court later addressed systemic failures in the due process system and the need for relief to remedy IDEA delay and nonimplementation. 382 F. Supp. 2d 3, 8–10 (D.D.C. 2005).

771. In *L.V. v. New York City Department of Education*, the court recognized that DOE's failure to provide timely due process can itself violate the substantive right to FAPE guaranteed under the IDEA. No. 03 Civ. 9917 (LAP), 2005 WL 2298173, at *4 n.4 (S.D.N.Y. Sept. 20, 2005).

772. In *Department of Education v. T.G.*, the court held that a school district's failure to provide a resolution session, convene a due process hearing, and issue an administrative decision within the regulatory timelines violated the parents' substantive rights and denied the student a FAPE. No. 10-00643 JMS/KSC, 2011 WL 816808, at *8–9 (D. Haw. Feb. 28, 2011).

773. In *C.P. v. New Jersey Department of Education*, the court recognized that significant interference with parental participation in IDEA decision-making can constitute a denial of FAPE and can support injunctive relief to remedy systemic defects in the due process system. No. 19-12807 (MAS) (DEA), 2022 WL 3998700, at *37 (D.N.J. Sept. 1, 2022).

774. In *Massey v. District of Columbia*, the court recognized that violation of IDEA procedural requirements can itself constitute the denial of a FAPE. 400 F. Supp. 2d 66, 79 (D.D.C. 2005).

775. DOE's failure to convene legally compliant resolution meetings, OATH's failure to enforce timelines, and NYSED/OSR's delayed review are not merely procedural background.

776. Those failures significantly impeded Parent's ability to obtain timely resolution, prolonged DOE's nonimplementation, shifted the financial burden to Parent and providers, and frustrated the IDEA's stay-put and dispute-resolution framework.

777. These timeline and resolution-meeting failures support Plaintiff's procedural-denial-of-FAPE, declaratory, prospective-relief, and discovery-related claims against Defendants.

## XIII. Student Profile and Educational Needs

### A. Disability Profile

778. C.C. is a student with a disability under the IDEA and New York law. Exs. A, D.

779. C.C. has a brain-based disorder that causes severe impairments in cognition, language, memory, attention, reasoning, problem solving, sensory and perceptual abilities, motor abilities, physical functioning, information processing, and speech. Exs. A, D.

780. C.C. is non-verbal. Exs. A, D.

781. C.C. is non-ambulatory. Exs. A, D.

782. C.C. has intensive management needs. Exs. A, D.

783. C.C.'s disability profile requires a highly individualized educational program, intensive related services, assistive technology, adult support, and specialized transportation. Exs. A, D.

### B. Educational and Access Needs

784. C.C. requires a small, highly structured classroom. Exs. A, D.

785. C.C. requires a 1:1 direct-instruction model. Exs. A, D.

786. C.C. requires a modified environment. Exs. A, D.

787. C.C. requires a full-time 1:1 paraprofessional. Exs. A, D.

788. C.C. requires assistance with activities of daily living. Exs. A, D.

789. C.C. requires occupational therapy. Exs. A, D.

790. C.C. requires physical therapy. Exs. A, D.

791. C.C. requires speech-language therapy. Exs. A, D.

792. C.C. requires assistive technology. Exs. A, D.

793. C.C. requires vision education services. Exs. A, D.

794. C.C. requires hearing education services. Exs. A, D.

795. C.C. requires music therapy. Exs. A, D.

796. C.C. requires an extended school day. Exs. A, D.

797. C.C. requires an extended school year. Exs. A, D.

798. C.C. requires specialized transportation to access C.C.'s educational program. Exs. A, D.

799. C.C.'s educational and access needs are the reason iBRAIN tuition and Sisters transportation are pleaded as an integrated maintained-placement package rather than unrelated services. Exs. A, C, D, F.

**C. iBRAIN Program**

800. C.C. began attending iBRAIN during the 2023–2024 school year. Exs. A, D.

801. iBRAIN is a specialized program for students with brain injury or brain-based disorders. Exs. A, D.

802. At iBRAIN, C.C. receives academic instruction designed for students with brain-based disabilities. Exs. A, D.

803. At iBRAIN, C.C. receives related services. Exs. A, D.

804. At iBRAIN, C.C. receives assistive technology devices and services. Exs. A, D.

805. At iBRAIN, C.C. receives 1:1 paraprofessional support. Exs. A, D.

806. At iBRAIN, C.C. receives programming designed to address C.C.'s cognitive, communication, physical, sensory, motor, and access needs. Exs. A, D.

807. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s 2024–2025 tuition at iBRAIN. Ex. C.

808. SRO Decision No. 25-150 established iBRAIN, together with Sisters transportation, as C.C.'s operative status quo for 2025–2026. Exs. C, D, F.

**D. Maintained-Placement Package**

809. For C.C., the maintained-placement package pleaded in this action consists of iBRAIN tuition and Sisters transportation. Exs. A, C, D, F.

810. The 2024–2025 DPC, SRO Decision No. 25-150, the 2025–2026 DPC, and the 2025–2026 Supplemental Pendency Brief identify iBRAIN tuition and Sisters transportation as the operative maintained-placement package. Exs. A, C, D, F.

811. The relief requested in this action is limited to the C.C.-specific maintained-placement components supported by C.C.'s DPCs, contracts, administrative record, and Parent's instructions.

**XIV. Contract-Based Maintained-Placement Costs, Late Fees, and Interest**

**A. Late Fees and Interest Are Not Punitive Damages**

812. Plaintiff seeks late fees and interest as contract-based maintained-placement costs.

813. Plaintiff does not seek late fees or interest as punitive damages.

814. Late fees and interest accrued because DOE failed to timely implement SRO Decision No. 25-150 for the 2024–2025 school year.

815. Late fees and interest also accrued because DOE failed to timely maintain C.C.'s 2025–2026 pendency/status quo placement.

816. DOE's nonpayment caused Parent and providers to bear the financial consequences of DOE's failure to fund the publicly required placement and transportation package.

817. The late fees and interest are part of the cost of maintaining the placement under the contracts DOE received with the DPCs and implementation materials. Exs. A, D.

818. DOE cannot reduce the cost of maintaining C.C.'s placement by delaying payment until late fees, interest, or other contract-based financial consequences accrue.

**B. DOE's Obligation Is Statutory; Contracts Define Cost**

819. DOE's obligation to maintain C.C.'s pendency/status quo placement arises under the IDEA. See 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518.

820. DOE's obligation to implement SRO Decision No. 25-150 arises from the IDEA, New York's administrative review framework, and the final, unappealed SRO decision. Ex. C.

821. The IDEA's stay-put provision requires DOE to maintain C.C.'s then-current educational placement during the pendency of proceedings. See 20 U.S.C. § 1415(j).

822. Federal regulations require C.C. to remain in the current educational placement during the pendency of administrative or judicial proceedings unless Parent and the public agency agree otherwise. See 34 C.F.R. § 300.518(a).

823. Federal regulations further provide that, when a State review official agrees with the parent that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parent for stay-put purposes. See 34 C.F.R. § 300.518(d).

824. In *Zvi D. ex rel. Shirley D. v. Ambach*, the Second Circuit recognized that implicit in maintaining the status quo is the requirement that the school district continue to finance the educational placement. 694 F.2d 904, 906 (2d Cir. 1982).

825. In *M.R. v. Ridley School District*, the Third Circuit recognized that financing goes hand-in-hand with pendent private-school placement. 744 F.3d 112, 123 (3d Cir. 2014).

826. In *Mendez v. Banks*, the Second Circuit recognized the relationship between funding and placement in the pendency context. 65 F.4th 56, 62–63 (2d Cir. 2023).

827. DOE's obligation is statutory, but the contracts define the cost, scope, payment schedule, and financial consequences of maintaining C.C.'s placement.

828. The iBRAIN and Sisters contracts attached to the DPCs define the tuition, transportation, payment timing, late-fee, interest, and nonpayment consequences associated with the maintained placement. Exs. A, D.

829. DOE had notice of those contractual terms through the DPCs, contracts, and implementation materials. Exs. A, D.

**C. Lack of Privity Does Not Defeat Payment**

830. DOE is not being sued as a breaching party to Parent's iBRAIN or Sisters contracts.

831. DOE is being sued to enforce the IDEA, SRO Decision No. 25-150, C.C.'s automatic pendency/status quo rights, and related federal obligations.

832. DOE cannot avoid its IDEA obligations by arguing that DOE is not a signatory to Parent's contracts with iBRAIN or Sisters.

833. In *School Committee of Burlington v. Department of Education*, the Supreme Court recognized that parents may obtain public funding for an appropriate unilateral placement where the public agency failed to provide a FAPE. 471 U.S. 359, 369–70 (1985).

834. In *Florence County School District Four v. Carter ex rel. Carter*, the Supreme Court reaffirmed that reimbursement or funding may be appropriate even when the private placement is not itself approved by the State. 510 U.S. 7, 13–16 (1993).

835. In *Zvi D.*, the Second Circuit recognized that cutting off public funding for a maintained placement would amount to a unilateral change in placement prohibited by the IDEA. 694 F.2d at 906.

836. In *M.R.*, the Third Circuit recognized that once there is a State agreement concerning pendent placement, financial responsibility follows. 744 F.3d at 123.

837. In *Mendez*, the Second Circuit recognized that funding and placement are linked in the pendency context. 65 F.4th at 62–63.

838. In *L.V. v. New York City Department of Education*, Judge Preska rejected DOE's attempt to avoid IDEA implementation obligations by invoking state-law contract and public-fisc theories. No. 03 Civ. 9917 (LAP), 2021 WL 663718, at *12–16 (S.D.N.Y. Feb. 18, 2021).

839. Judge Preska recognized that final administrative orders issued under the IDEA and New York's implementing statutes are legal obligations and that DOE's only lawful course is to implement them. See id. at *12–13.

840. Judge Preska further rejected DOE's reliance on contract-law theories where the tuition contracts were between parents and private schools, explaining that DOE could not use those theories to avoid its statutory implementation obligations. See id. at *14–16.

841. Here, SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s iBRAIN tuition and Sisters transportation in accordance with Parent's enrollment and transportation agreements. Ex. C.

842. DOE's lack of privity with iBRAIN or Sisters does not defeat DOE's obligation to fund the contract-based maintained-placement costs required by SRO Decision No. 25-150 and C.C.'s continuing pendency/status quo rights.

**D. DPCs and Implementation Submission Gave DOE Notice**

843. DOE received Parent's 2024–2025 DPC, including the iBRAIN enrollment contract and Sisters transportation contract. Ex. A.

844. DOE received Parent's 2025–2026 DPC, including the iBRAIN enrollment contract and Sisters transportation contract. Ex. D.

845. DOE received SRO Decision No. 25-150. Ex. C.

846. DOE received the October 2, 2025 implementation package submitted by Parent through counsel.

847. The October 2, 2025 implementation package included the filed DPC.

848. The October 2, 2025 implementation package included iBRAIN attendance documentation.

849. The October 2, 2025 implementation package included a tuition affidavit.

850. The October 2, 2025 implementation package included a Sisters affidavit.

851. The October 2, 2025 implementation package included a Sisters invoice.

852. The October 2, 2025 implementation package included the January 27, 2025 FOFD.

853. The October 2, 2025 implementation package included SRO Decision No. 25-150.

854. DOE therefore had notice of C.C.'s placement, providers, contractual amounts, attendance, transportation invoice, affidavits, final SRO decision, and implementation request.

855. DOE nevertheless has paid nothing toward C.C.'s 2024–2025 iBRAIN tuition.

856. DOE nevertheless has paid nothing toward C.C.'s 2024–2025 Sisters transportation.

857. DOE nevertheless has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition.

858. DOE nevertheless has paid nothing toward C.C.'s 2025–2026 Sisters transportation.

## XV. Amounts Owed and Nonpayment

### A. 2024–2025 Amounts

859. For the 2024–2025 school year, C.C.'s iBRAIN tuition was $337,124.20. Ex. A.

860. For the 2024–2025 school year, C.C.'s Sisters transportation was $220,993.00. Ex. A.

861. The total 2024–2025 principal amount for iBRAIN tuition and Sisters transportation was $558,117.20. Ex. A.

862. Late fees and interest are owed per the contracts attached to the 2024–2025 DPC. Ex. A.

863. DOE has paid $0 toward the 2024–2025 principal amount.

864. DOE has paid $0 toward the 2024–2025 late fees and interest.

865. DOE's unpaid 2024–2025 principal obligation is $558,117.20, exclusive of late fees, interest, attorneys' fees, costs, and other relief available by law. Exs. A, C.

### B. 2025–2026 Amounts

866. For the 2025–2026 school year, C.C.'s iBRAIN tuition was $364,266.50. Ex. D.

867. For the 2025–2026 school year, C.C.'s Sisters transportation was $235,662.00. Ex. D.

868. The total 2025–2026 principal amount for iBRAIN tuition and Sisters transportation was $599,928.50. Ex. D.

869. Late fees and interest are owed per the contracts attached to the 2025–2026 DPC. Ex. D.

870. DOE has paid $0 toward the 2025–2026 principal amount.

871. DOE has paid $0 toward the 2025–2026 late fees and interest.

872. DOE's unpaid 2025–2026 principal obligation is $599,928.50, exclusive of late fees, interest, attorneys' fees, costs, and other relief available by law. Ex. D.

**C. Continuing Harm**

873. Parent remains contractually obligated for C.C.'s iBRAIN tuition and Sisters transportation.

874. iBRAIN continues to carry financial risk because DOE has not funded C.C.'s tuition.

875. Sisters continues to carry financial risk because DOE has not funded C.C.'s transportation.

876. DOE's nonpayment threatens the continuity of C.C.'s school placement.

877. DOE's nonpayment threatens the continuity of C.C.'s specialized transportation.

878. DOE's nonpayment shifts the burden of public funding from DOE to Parent and providers.

879. Late fees and interest accrue because DOE has not timely implemented SRO Decision No. 25-150 or C.C.'s 2025–2026 pendency/status quo placement.

880. DOE's delay undermines the purpose of stay-put, which is to preserve the student's educational status quo during administrative and judicial proceedings.

881. DOE's nonpayment after SRO Decision No. 25-150 cannot operate as a practical stay of that final, unappealed decision.

882. DOE's nonpayment during the pending 2025–2026 appeal cannot operate as a practical stay of C.C.'s pendency/status quo rights.

883. DOE did not obtain a stay.

884. DOE did not obtain any order excusing its nonpayment.

885. DOE's continuing nonpayment requires federal enforcement.

## XVI. Existing 2025–2026 Administrative Appeal

### A. FOFD Under Appeal

886. The 2025–2026 FOFD is currently under appeal.

887. Parent appealed the adverse equitable determinations in the 2025–2026 FOFD.

888. Parent filed the RFR on or about February 17, 2026.

889. The 2025–2026 SRO appeal remains pending.

890. DOE has not paid C.C.'s 2025–2026 iBRAIN tuition during the pending appeal.

891. DOE has not paid C.C.'s 2025–2026 Sisters transportation during the pending appeal.

892. DOE has not obtained a stay during the pending appeal.

### B. Favorable FOFD Findings

893. In the 2025–2026 FOFD, the IHO found that DOE denied C.C. a FAPE.

894. In the 2025–2026 FOFD, the IHO found that iBRAIN was appropriate for C.C.

895. In the 2025–2026 FOFD, the IHO determined pendency in Parent's favor based on SRO Decision No. 25-150.

896. In the 2025–2026 FOFD, the IHO made adverse equitable determinations.

897. Parent appealed the adverse equitable determinations.

898. The favorable findings that DOE denied C.C. a FAPE, that iBRAIN was appropriate, and that pendency was determined in Parent's favor support Plaintiff's 2025–2026 pendency and delay claims.

899. The adverse equitable determinations remain subject to review in the pending 2025–2026 SRO appeal.

### C. SRO Appeal Still Pending

900. The 2025–2026 SRO appeal remains pending.

901. Extensions have been granted in the 2025–2026 SRO appeal over Parent's objections.

902. DOE has not paid C.C.'s 2025–2026 iBRAIN tuition while the SRO appeal remains pending.

903. DOE has not paid C.C.'s 2025–2026 Sisters transportation while the SRO appeal remains pending.

904. DOE has not paid late fees or interest while the SRO appeal remains pending.

905. DOE has not obtained a stay.

906. DOE's nonpayment during the pending SRO appeal prolongs the financial burden on Parent, iBRAIN, and Sisters.

907. DOE's nonpayment during the pending SRO appeal allows administrative delay to function as a practical self-stay of C.C.'s pendency/status quo rights.

**D. 2025–2026 Administrative Posture**

908. The 25–26 administrative posture shows that the 2025–2026 proceeding remains unresolved while DOE continues to pay nothing.

909. The 2025–2026 administrative posture includes favorable findings that DOE denied C.C. a FAPE and that iBRAIN was appropriate.

910. The 2025–2026 administrative posture includes a favorable pendency determination based on SRO Decision No. 25-150.

911. The 2025–2026 administrative posture also includes adverse equitable determinations that Parent is challenging on appeal.

912. DOE's nonpayment continues during the pending SRO appeal without any stay.

913. Plaintiff seeks enforcement of SRO Decision No. 25-150 and C.C.'s automatic 2025–2026 pendency/status quo rights.

914. Plaintiff also preserves review of adverse or incomplete administrative determinations affecting pendency, contract-based costs, late fees, interest, payment timing, and implementation.

**E. Related State Article 78 Proceeding**

915. Plaintiff is also a petitioner in a related Article 78 proceeding in New York Supreme Court, New York County, captioned *Alexandra Fiallos et. al. v. Kamar H. Samuels et. al.,"* Index No. 151590/2026, assigned to Justice Lyle E. Frank.

916. The Article 78 proceeding names DOEand Chancellor Samuels as respondents and sseks state-law mandamus relief concerning DOE's failure to implement existing pendency orders, including the January 11, 2026 pendency order issued in C.C.'s 2025-2026 administrative proceeding, IHO Case No. 296761.

917. The Article 78 proceeding seeks a writ of mandamus to compel DOE and Chancellor Samuels to implement the 2025-2026 pendency order for C.C., including tuition and transportation funding in accordance with Parent's enrollment and transportation agreements.

918. The Article 78 proceeding does not seek review, reversal, vacatur or modification of SRO Decision No. 25-150.

919. The Article 78 proceeding does not seek the full federal declaratory, pendency, implementation, procedural, exhaustion, *Monell*, OATH, NYSED/OSR, late fee, interest or prospective relief as sought in this action.

920. This federal action is far more broad than the Article 78 proceeding.

921. This action seeks enforcement of SRO Decision No. 25-150for the 2024-2025 school year, enforcement of C.C.'s automatic federal stay-put rights for the 2025-2026 school

year, declaratory relief concerning the pendency/status quo effect of SRO Decision No. 25-150, relief concerning DOE's self-stay and non-implementation practices, contract-based maintained placement costs, federal procedural and delay relief and prospective relief concerning OATH and NYSED/OSR practices.

922. The Article 78 proceeding does not include OATH, OATH officials, NYSED, OSR or Commissioner Rosa as respondents.

923. The Article 78 proceeding does not address the full scope of Defendants' federal law obligations alleged in this Complaint, including Defendants' practices of allowing administrative delay, payment processing delay and order dependent implementation practices to delay, dilute or defeat automatic pendency.

924. DOE's conduct in the Article 78 record further confirms that DOE had notice of C.C.'s 2025-2026 pendency funding obligation.

925. DOE's January 18, 2026 authorization outreach emails concerned authorization to fund tuition and transportation in accordance with the enrollment contract and transportation agreement.

926. DOE's January 20, 2026 authorization emails confirmed receipt of the requested information and documents to implement pendency funding.

927. Despite that notice and authorization posture, DOE has not funded C.C.'s 2025-2026 iBRAIN tuition, Sisters transportation, late fees, interest or related contract-bases maintained placement costs.

928. Plaintiff does not seek duplicative recovery. Any payment made by DOE pursuant to the Article 78 proceeding shall be credited against any overlapping monetary relief awarded in this action for the same 2025-2026 tuition or transportation obligation.

929. Plaintiff pleads the existence of the Article 78 proceeding so as to disclose related litigation, confirm DOE's notice, preserve Plaintiff's federal claims and to clarify that this action seeks broader relief than state mandamus enforcement of the January 11, 2026 pendency order.

## XVII. DOE, OATH, and NYSED/OSR Practice Allegations Supporting Discovery

### A. DOE Implementation Practices

930. Upon information and belief, DOE maintains policies, customs, practices, or procedures that treat pendency as order-dependent rather than automatic.

931. Upon information and belief, DOE delays implementation unless a new IHO, SRO, or federal order issues.

932. Upon information and belief, DOE refuses or delays funding for iBRAIN even when iBRAIN is part of the student's status quo.

933. Upon information and belief, DOE refuses or delays funding for Sisters transportation even when Sisters transportation is part of the student's status quo.

934. Upon information and belief, DOE uses "processing," "review," "due course," "documentation," appeal posture, or similar administrative explanations to delay payment.

935. Upon information and belief, DOE uses nonpayment to shift the financial burden of public funding to parents and providers.

936. Upon information and belief, DOE applies these practices to students placed at iBRAIN and transported by Sisters, including C.C.

937. DOE's implementation practices are relevant to Plaintiff's claims for enforcement, declaratory relief, prospective relief, *Monell* relief, discovery, attorneys' fees, costs, and all other appropriate relief.

**B. DOE Resolution-Meeting Practices**

938. Upon information and belief, DOE fails to convene legally compliant resolution meetings in IDEA due process matters.

939. Upon information and belief, DOE unilaterally selects resolution-meeting attendees.

940. Upon information and belief, DOE selects attendees who lack specific IEP Team knowledge of the facts identified in the DPC.

941. Upon information and belief, DOE selects attendees who lack decision-making authority.

942. Upon information and belief, DOE refuses to meaningfully discuss pendency during resolution meetings.

943. Upon information and belief, DOE refuses to meaningfully discuss tuition funding during resolution meetings.

944. Upon information and belief, DOE refuses to meaningfully discuss transportation funding during resolution meetings.

945. Upon information and belief, DOE refuses to meaningfully discuss implementation or payment timing during resolution meetings.

946. Upon information and belief, DOE fails to use resolution meetings to address and resolve tuition, transportation, implementation, payment, and pendency issues.

947. DOE's resolution-meeting practices are relevant to Plaintiff's procedural-denial-of-FAPE claims, timeline claims, delay claims, discovery, and requested declaratory and prospective relief.

### C. OATH Timeline and Extension Practices

948. Upon information and belief, OATH fails to enforce resolution-triggered impartial-hearing timelines.

949. Upon information and belief, OATH permits delayed prehearing conferences.

950. Upon information and belief, OATH permits delayed hearings.

951. Upon information and belief, OATH grants or permits extensions over Parent objection.

952. Upon information and belief, OATH fails to require adequate written good-cause findings for extensions.

953. Upon information and belief, OATH fails to account for the financial prejudice caused by DOE nonpayment when permitting delay.

954. Upon information and belief, OATH fails to account for the educational prejudice caused by DOE nonpayment when permitting delay.

955. Upon information and belief, OATH fails to administer proceedings in a manner that prevents DOE's nonpayment from operating as a practical stay of pendency.

956. OATH's timeline and extension practices are relevant to Plaintiff's procedural-denial-of-FAPE claims, delay claims, declaratory claims, prospective-relief claims, and discovery.

### D. NYSED/OSR Review Delay Practices

957. Upon information and belief, OSR delays issuance of SRO decisions in IDEA administrative appeals.

958. Upon information and belief, OSR grants extensions over Parent objection without sufficient good cause.

959. Upon information and belief, OSR delay allows DOE nonpayment to continue during State-level review.

960. Upon information and belief, NYSED fails to exercise general supervision sufficient to ensure timely IDEA dispute resolution.

961. Upon information and belief, NYSED fails to exercise general supervision sufficient to prevent administrative delay from defeating pendency rights.

962. Upon information and belief, NYSED/OSR practices allow administrative delay to operate as a practical stay.

963. NYSED/OSR review-delay practices are relevant to Plaintiff's procedural-denial-of-FAPE claims, delay claims, pendency claims, declaratory claims, prospective-relief claims, and discovery.

**E. L.V. / J.S.M. Context**

964. DOE nonimplementation of favorable administrative orders is a known systemic problem.

965. Due-process delay in New York City is a known systemic problem.

966. In *L.V. v. New York City Department of Education*, the court addressed DOE's failure to timely implement favorable administrative orders and the need for concrete implementation obligations. No. 03 Civ. 9917 (LAP), 2021 WL 663718, at *12–16 (S.D.N.Y. Feb. 18, 2021).

967. In *L.V.,* Judge Preska recognized that final administrative orders issued under the IDEA and New York's implementing statutes are legal obligations and that DOE's only lawful course is to implement them. See id. at *12–13.

968. *J.S.M. v. New York City Department of Education*, No. 20-cv-705 (E.D.N.Y.), addressed systemic due-process hearing delays affecting New York City students with disabilities.

969. C.C.'s case illustrates continuing failures in those systems.

970. DOE has paid nothing after SRO Decision No. 25-150, a final and unappealed SRO decision. Ex. C.

971. DOE has paid nothing during C.C.'s ongoing 2025–2026 pendency period. Exs. C, D, F.

972. OATH timeline issues delayed or failed to protect C.C.'s timely process and pendency rights. Exs. B, E.

973. OSR delay during the pending 2025–2026 appeal allows DOE's nonpayment to continue without a stay.

974. These practices support Plaintiff's request for discovery into DOE implementation practices, DOE resolution-meeting practices, OATH timeline and extension practices, NYSED/OSR review-delay practices, and the manner in which those practices allow administrative delay to defeat automatic pendency.

## XVIII. Causes of Action

### Count I — Enforcement of Final, Unappealed SRO Decision No. 25-150 Against DOE

975. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

976. This Count is asserted against DOE.

977. SRO Decision No. 25-150 issued on September 29, 2025. Ex. C.

978. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s 2024–2025 tuition at iBRAIN in accordance with Parent's enrollment agreement. Ex. C.

979. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s 2024–2025 transportation expenses in accordance with Parent's transportation agreement. Ex. C.

980. DOE did not appeal SRO Decision No. 25-150.

981. DOE did not seek or obtain a stay of SRO Decision No. 25-150.

982. DOE did not obtain any reversal, vacatur, modification, or other order relieving DOE of its obligation to implement SRO Decision No. 25-150.

983. SRO Decision No. 25-150 is final, binding, and enforceable. See 20 U.S.C. § 1415(i); N.Y. Educ. Law § 4404(3)(a).

984. Plaintiff does not seek review, reversal, vacatur, or modification of SRO Decision No. 25-150.

985. Plaintiff seeks enforcement of SRO Decision No. 25-150.

986. DOE's failure to implement SRO Decision No. 25-150 violates the IDEA, New York Education Law, and DOE's obligation to comply with final administrative orders.

987. Final administrative orders issued under the IDEA and New York's implementing statutes are legal obligations, and *DOE's lawful course is to implement them. See L.V. v. New York City Department of Education*, No. 03 Civ. 9917 (LAP), 2021 WL 663718, at *12–16 (S.D.N.Y. Feb. 18, 2021).

988. *The binding effect of final administrative orders is central to* the IDEA's administrative framework. See *Antkowiak* ex rel. *Antkowiak* v. Ambach, 838 F.2d 635, 641 (2d Cir. 1988).

989. DOE has paid nothing toward the 2024–2025 iBRAIN tuition ordered by SRO Decision No. 25-150.

990. DOE has paid nothing toward the 2024–2025 Sisters transportation ordered by SRO Decision No. 25-150.

991. DOE's nonimplementation is continuing.

992. DOE's nonimplementation requires federal enforcement.

**Count II — Enforcement of 2025–2026 Automatic / Continuing Pendency Against DOE**

993. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

994. This Count is asserted against DOE.

995. C.C.'s 2025–2026 pendency/status quo placement is iBRAIN with Sisters transportation. Exs. C, D, F.

996. SRO Decision No. 25-150 established C.C.'s iBRAIN-plus-Sisters-transportation status quo. Ex. C.

997. Parent invoked that status quo in the 2025–2026 DPC. Ex. D.

998. Parent preserved and briefed that status quo in the 2025–2026 Supplemental Pendency Brief. Ex. F.

999. The IDEA requires DOE to maintain C.C.'s then-current educational placement during the pendency of administrative and judicial proceedings. See 20 U.S.C. § 1415(j).

1000. Federal regulations require that, during the pendency of administrative or judicial proceedings regarding a DPC, C.C. must remain in the current educational placement unless Parent and the public agency agree otherwise. See 34 C.F.R. § 300.518(a).

1001. New York law likewise protects C.C.'s pendency placement during administrative and judicial proceedings. See N.Y. Educ. Law § 4404(4)(a).

1002. DOE violated 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518(a), and N.Y. Educ. Law § 4404(4)(a) by failing to maintain and fund C.C.'s continuing iBRAIN-plus-Sisters-transportation status quo for the 2025–2026 school year.

1003. DOE has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition.

1004. DOE has paid nothing toward C.C.'s 2025–2026 Sisters transportation.

1005. DOE's nonpayment during the pending 2025–2026 administrative appeal continues to violate C.C.'s automatic stay-put rights.

1006. DOE's nonpayment during the pending 2025–2026 administrative appeal continues to operate as a practical self-stay of C.C.'s automatic pendency/status quo rights.

**Count III — Declaratory Judgment that SRO Decision No. 25-150 Established C.C.'s Status Quo / Pendency Anchor**

1007. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1008. This Count is asserted against DOE.

1009. An actual and justiciable controversy exists concerning the status-quo and pendency effect of SRO Decision No. 25-150.

1010. SRO Decision No. 25-150 ordered DOE to directly fund C.C.'s iBRAIN tuition and Sisters transportation for the 2024–2025 school year. Ex. C.

1011. SRO Decision No. 25-150 constituted a State-level administrative decision in Parent's favor concerning C.C.'s iBRAIN placement and Sisters transportation. Ex. C.

1012. SRO Decision No. 25-150 established C.C.'s status quo for pendency purposes.

1013. C.C.'s status quo includes iBRAIN tuition and Sisters transportation.

1014. Plaintiff is entitled to a declaratory judgment that SRO Decision No. 25-150 established C.C.'s pendency/status quo placement, including iBRAIN tuition and Sisters transportation.

**Count IV — Declaratory Judgment that No New Pendency Order, Appeal Exhaustion, DOE Agreement, or Federal Preliminary Injunction Was Required**

1015. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1016. This Count is asserted against DOE.

1017. An actual and justiciable controversy exists concerning DOE's position that pendency implementation may depend on DOE agreement, administrative confirmation, completion of review, or further order.

1018. C.C.'s pendency rights attached automatically under 20 U.S.C. § 1415(j).

1019. DOE's obligation to maintain C.C.'s pendency/status quo placement did not depend on a new IHO pendency order.

1020. DOE's obligation did not depend on DOE agreement.

1021. DOE's obligation did not depend on completion of the pending 2025–2026 SRO appeal.

1022. DOE's obligation did not depend on a federal preliminary injunction.

1023. Any IHO, SRO, or federal order concerning pendency may confirm, declare, or enforce pendency, but such an order does not create the automatic statutory right.

1024. Plaintiff is entitled to a declaratory judgment that no new IHO pendency order, DOE agreement, completion of the pending SRO appeal, or federal preliminary injunction was required before DOE had to maintain C.C.'s pendency/status quo placement.

**Count V — Placement-Setting Declaratory Claim**

1025. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1026. This Count is asserted against DOE.

1027. An actual and justiciable controversy exists concerning whether DOE may avoid pendency by relying on payment mechanics, appeal posture, pending equitable disputes, implementation timing, or administrative delay.

1028. SRO Decision No. 25-150 fully sustained Parent's 2024–2025 claim and ordered direct funding of C.C.'s iBRAIN tuition and Sisters transportation. Ex. C.

1029. SRO Decision No. 25-150 established the operative placement-setting determination for C.C.'s 2025–2026 pendency/status quo.

1030. The placement-setting findings and orders in SRO Decision No. 25-150 establish C.C.'s pendency/status quo notwithstanding disputes about payment mechanics, implementation timing, late fees, interest, appeal posture, or administrative delay.

1031. Plaintiff is entitled to a declaratory judgment that the placement-setting determinations in SRO Decision No. 25-150 established C.C.'s pendency/status quo placement for 2025–2026.

**Count VI — DOE Self-Stay / Nonimplementation**

1032. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1033. This Count is asserted against DOE.

1034. DOE did not obtain a stay of SRO Decision No. 25-150.

1035. DOE did not obtain a stay of C.C.'s 2025–2026 pendency/status quo rights.

1036. DOE nevertheless has paid nothing toward C.C.'s 2024–2025 iBRAIN tuition.

1037. DOE nevertheless has paid nothing toward C.C.'s 2024–2025 Sisters transportation.

1038. DOE nevertheless has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition.

1039. DOE nevertheless has paid nothing toward C.C.'s 2025–2026 Sisters transportation.

1040. DOE unlawfully treated its own nonpayment as a stay.

1041. DOE unlawfully treated internal processing as a stay.

1042. DOE unlawfully treated administrative delay as a stay.

1043. DOE unlawfully treated appeal posture as a stay.

1044. DOE unlawfully treated the absence of further implementation action as a stay.

1045. DOE cannot self-stay SRO Decision No. 25-150 or C.C.'s automatic pendency rights through nonpayment, internal processing, administrative delay, appeal posture, documentation review, or failure to complete implementation.

1046. DOE's self-stay and nonimplementation practices violate the IDEA and require declaratory, enforcement, accounting, and monetary relief.

**Count VII — Contract-Based Maintained-Placement Costs, Including Late Fees and Interest**

1047. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1048. This Count is asserted against DOE.

1049. DOE's obligation to fund C.C.'s placement arises from the IDEA, SRO Decision No. 25-150, and C.C.'s continuing pendency/status quo rights.

1050. The iBRAIN and Sisters contracts define the cost, scope, payment schedule, late-fee provisions, interest provisions, and nonpayment consequences associated with maintaining C.C.'s placement. Exs. A, D.

1051. Late fees and interest are not sought as punitive damages.

1052. Late fees and interest are sought as contract-based maintained-placement costs caused by DOE's failure to timely implement SRO Decision No. 25-150 and C.C.'s 2025–2026 pendency/status quo placement.

1053. DOE's failure to timely pay caused contractual late fees, interest, and related maintained-placement costs to accrue.

1054. DOE must fund contract-based maintained-placement costs, including late fees and interest where required by the DPC-attached contracts.

1055. Plaintiff is entitled to relief requiring DOE to fund principal, late fees, interest, and related maintained-placement costs necessary to make C.C.'s placement whole.

**Count VIII — Declaratory Judgment that Lack of Privity Does Not Defeat Contract-Based Maintained-Placement Costs**

1056. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1057. This Count is asserted against DOE.

1058. DOE may contend that it is not obligated to fund late fees, interest, or other contract-based maintained-placement costs because DOE is not a signatory to Parent's contracts with iBRAIN or Sisters.

1059. DOE's statutory and administrative obligations are not defeated by DOE's nonparty status to Parent-provider contracts.

1060. DOE is not being sued as a breaching contract party.

1061. DOE is being sued to enforce the IDEA, SRO Decision No. 25-150, C.C.'s automatic pendency/status quo rights, and related federal obligations.

1062. The contracts define the cost of the maintained placement.

1063. DOE received the DPCs and contracts, had notice of the amounts and payment terms, and was ordered by SRO Decision No. 25-150 to directly fund tuition and transportation in accordance with Parent's enrollment and transportation agreements. Exs. A, C, D.

1064. DOE's lack of privity with iBRAIN or Sisters does not defeat DOE's obligation to fund contract-based maintained-placement costs.

1065. Plaintiff is entitled to a declaratory judgment that DOE's lack-of-privity defense does not defeat contract-based maintained-placement costs.

**Count IX — DOE Failure to Conduct Legally Compliant Resolution Meetings**

1066. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1067. This Count is asserted against DOE.

1068. DOE was required to convene a resolution meeting within fifteen days of receiving Parent's 2024–2025 DPC unless waived in writing or replaced by mediation by agreement. See 20 U.S.C. § 1415(f)(1)(B)(i); 34 C.F.R. § 300.510(a)(1).

1069. DOE was required to convene a resolution meeting within fifteen days of receiving Parent's 2025–2026 DPC unless waived in writing or replaced by mediation by agreement. See id.

1070. Parent requested legally compliant resolution meetings in both DPCs. Exs. A, D.

1071. A legally compliant resolution meeting required Parent, relevant IEP Team members with specific knowledge of the facts identified in the DPC, and a public agency representative with decision-making authority. See 34 C.F.R. § 300.510(a)(1), (a)(4).

1072. A legally compliant resolution meeting had to be capable of meaningfully addressing the issues raised in the DPCs, including pendency, tuition, transportation, payment timing, and possible resolution. Exs. A, D.

1073. If DOE failed to hold or participate in a legally compliant resolution meeting within fifteen days, Parent was entitled to seek IHO intervention to begin the impartial-hearing timeline. See 34 C.F.R. § 300.510(b)(5); 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(b).

1074. Parent invoked these timeline consequences in the DPCs and in the July 11, 2024 and August 11, 2025 emails. Exs. A, B, D, E.

1075. DOE failed to convene legally compliant resolution meetings after the 2024–2025 and 2025–2026 DPCs.

1076. DOE's resolution-meeting failures violated the IDEA, its implementing regulations, and New York's impartial-hearing regulations.

**Count X — DOE Procedural Denial of FAPE Through Resolution and Timeline Violations**

1077. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1078. This Count is asserted against DOE.

1079. DOE's resolution-meeting failures and timeline violations significantly impeded Parent's participation in the IDEA process.

1080. DOE's resolution-meeting failures and timeline violations deprived C.C. and Parent of IDEA procedural safeguards.

1081. DOE's resolution-meeting failures and timeline violations prolonged DOE's nonimplementation of SRO Decision No. 25-150 and C.C.'s 2025–2026 pendency/status quo placement.

1082. DOE's resolution-meeting failures and timeline violations shifted the burden of public funding to Parent, iBRAIN, and Sisters.

1083. DOE's resolution-meeting failures and timeline violations constituted procedural violations that impeded C.C.'s right to FAPE, significantly impeded Parent's opportunity to participate, and caused deprivation of educational benefits. See 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2); 8 N.Y.C.R.R. § 200.5(j)(4)(ii).

1084. DOE's conduct constituted a procedural denial of FAPE.

1085. Plaintiff is entitled to declaratory, prospective, and other appropriate relief for DOE's procedural-denial-of-FAPE violations.

**Count XI — OATH 2024–2025 and 2025–2026 Timeline / Extension / Pendency-Delay Violations**

1086. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1087. This Count is asserted against OATH, Vilda Vera Mayuga in her official capacity, Noel R. Garcia in his official capacity, and William Stewart in his official capacity for declaratory and prospective federal-law relief under the IDEA and related federal law, and not for damages or an order compelling compliance with state law as such.

1088. OATH administers New York City impartial hearings, assigns IHOs, schedules proceedings, tracks compliance dates, and administers hearing timelines.

1089. Parent's July 11, 2024 email placed OATH and the IHO on notice of Parent's 2024–2025 timeline and pendency positions. Ex. B.

1090. Parent's August 11, 2025 email placed OATH and the IHO on notice of Parent's 2025–2026 timeline and pendency positions. Ex. E.

1091. OATH failed to administer the 2024–2025 and 2025–2026 hearing timelines in a manner that protected Parent's statutory timeline rights.

1092. OATH failed to administer the 2024–2025 and 2025–2026 hearing timelines in a manner that protected C.C.'s automatic pendency rights.

1093. OATH permitted administrative delay to prolong DOE's nonpayment.

1094. OATH failed to ensure that timeline and extension practices accounted for the financial and educational prejudice caused by DOE's nonpayment.

1095. OATH failed to prevent hearing administration and delay from functioning as a practical stay of C.C.'s pendency/status quo rights.

1096. OATH's timeline, extension, and pendency-delay practices as applied to C.C. violated the IDEA and its implementing regulations.

1097. Plaintiff seeks declaratory and prospective federal-law relief against the OATH Defendants to prevent hearing-administration practices from delaying, diluting, or defeating C.C.'s automatic pendency rights under the IDEA.

**Count XII — NYSED/OSR Ongoing 2025–2026 Review Delay**

1098. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1099. This Count is asserted against NYSED, OSR, and Commissioner Betty A. Rosa in her official capacity for declaratory and prospective federal-law relief under the IDEA and related federal law, and not for damages or an order compelling compliance with state law as such.

1100. NYSED and OSR administer State-level review of IHO decisions under New York's IDEA review system.

1101. The 2025–2026 SRO appeal remains pending.

1102. Extensions have been granted in the 2025–2026 SRO appeal over Parent's objections.

1103. DOE has paid nothing toward C.C.'s 2025–2026 iBRAIN tuition during the pending SRO appeal.

1104. DOE has paid nothing toward C.C.'s 2025–2026 Sisters transportation during the pending SRO appeal.

1105. DOE has not obtained a stay during the pending SRO appeal.

1106. State-level review delay, as applied to C.C., allows DOE's nonpayment to continue as a practical self-stay of C.C.'s automatic pendency rights.

1107. State-level review delay, as applied to C.C., continues to prejudice Parent, C.C., iBRAIN, and Sisters.

1108. Plaintiff seeks declaratory and prospective federal-law relief against the NYSED/OSR Defendants to prevent State-level review delay from nullifying C.C.'s automatic pendency rights under the IDEA.

**Count XIII — NYSED/OSR Failure to Ensure Timely State Review and General Supervision**

1109. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1110. This Count is asserted against NYSED, OSR, and Commissioner Betty A. Rosa in her official capacity for declaratory and prospective federal-law relief under the IDEA and related federal law, and not for damages or an order compelling compliance with state law as such.

1111. NYSED is the State educational agency responsible for IDEA general supervision.

1112. NYSED is responsible for ensuring that New York's IDEA due process and State-level review systems comply with federal law.

1113. OSR administers SRO appeals, review records, extension requests, and SRO decision timelines.

1114. The NYSED/OSR Defendants failed to ensure IDEA-compliant State-level review timelines as applied to C.C.

1115. The NYSED/OSR Defendants failed to prevent delay practices that undermine C.C.'s automatic pendency rights.

1116. The NYSED/OSR Defendants failed to administer State-level review in a manner that prevented DOE's nonpayment from operating as a practical stay.

1117. Those failures violated the IDEA and its implementing regulations as applied to C.C.

1118. Plaintiff seeks declaratory and prospective federal-law relief requiring NYSED/OSR to administer State-level review and IDEA general supervision in a manner that does not delay, dilute, or defeat C.C.'s automatic pendency rights under the IDEA.

**Count XIV — Preservation of 2025–2026 Pendency, Implementation, and Review Rights During Pending Administrative Appeal**

1119. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1120. This Count is asserted as necessary against DOE and, to the extent federal review or prospective federal-law relief is available, against NYSED and OSR.

1121. The 25–26 FOFD is currently under administrative appeal.

1122. Parent appealed adverse equitable determinations in the 25–26 FOFD.

1123. Parent filed the RFR on or about February 17, 2026.

1124. The 25–26 SRO appeal remains pending.

1125. Plaintiff does not ask this Court to decide the merits of the pending 25–26 administrative appeal before OSR issues a final decision, except to the extent necessary to enforce C.C.'s automatic pendency rights, prevent DOE's nonpayment from operating as a practical stay, and preserve Plaintiff's federal claims.

1126. Plaintiff preserves review of any adverse or incomplete administrative determinations affecting pendency, contract-based costs, late fees, interest, payment timing, implementation, and equitable relief once such determinations are final or otherwise reviewable.

1127. Plaintiff seeks judicial relief now to enforce SRO Decision No. 25-150, enforce C.C.'s automatic 2025–2026 pendency rights, and prevent DOE's nonpayment and

administrative delay from defeating rights that exist during the pendency of the administrative process.

**Count XV — Exhaustion Futility / Direct Federal Enforcement**

1128. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1129. This Count is asserted against Defendants to the extent each Defendant asserts or relies on exhaustion, ripeness, administrative incompleteness, or pending administrative review as a defense to federal enforcement.

1130. Exhaustion is unnecessary and futile for Plaintiff's pendency enforcement claims.

1131. Exhaustion is unnecessary and futile for Plaintiff's enforcement of SRO Decision No. 25-150.

1132. Exhaustion is unnecessary and futile for Plaintiff's implementation claims.

1133. Exhaustion is unnecessary and futile for Plaintiff's delay claims.

1134. Stay-put operates during administrative proceedings and is designed to preserve the student's placement while those proceedings unfold.

1135. Requiring additional administrative exhaustion before enforcing C.C.'s pendency rights would defeat the purpose of stay-put.

1136. The administrative process cannot hold DOE in contempt, supervise DOE's payment implementation, compel prompt payment in the manner available to this Court, or remedy systemic implementation practices in the manner available through federal judicial relief.

1137. Plaintiff is entitled to a declaration that exhaustion is unnecessary and futile for Plaintiff's pendency enforcement, SRO enforcement, implementation, and delay claims.

**Count XVI — 42 U.S.C. § 1983 / *Monell* Against DOE**

1138. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1139. This Count is asserted against DOE.

1140. DOE acted under color of state law.

1141. To the extent Plaintiff's federal rights are enforceable through 42 U.S.C. § 1983, DOE deprived C.C. and Parent of rights secured by federal law, including C.C.'s automatic stay-put rights under 20 U.S.C. § 1415(j), Parent's procedural-participation rights, and the right to implementation of final administrative obligations under the IDEA framework.

1142. DOE maintains policies, customs, or practices of failing to hold legally compliant resolution meetings.

1143. DOE maintains policies, customs, or practices of refusing to meaningfully address pendency.

1144. DOE maintains policies, customs, or practices of treating pendency as order-dependent rather than automatic.

1145. DOE maintains policies, customs, or practices of delaying implementation of final administrative orders.

1146. DOE maintains policies, customs, or practices of delaying implementation of automatic pendency rights.

1147. DOE maintains policies, customs, or practices of refusing or delaying iBRAIN funding.

1148. DOE maintains policies, customs, or practices of refusing or delaying Sisters transportation funding.

1149. DOE maintains policies, customs, or practices of using administrative delay as a self-stay.

1150. DOE maintains policies, customs, or practices of imposing extra-statutory preconditions on automatic stay-put implementation.

1151. DOE maintains policies, customs, or practices of failing to train or supervise personnel concerning pendency implementation.

1152. DOE maintains policies, customs, or practices of failing to train or supervise personnel concerning final-order enforcement.

1153. DOE knew or should have known that these policies, customs, or practices would cause students and parents to be deprived of stay-put rights, timely process, implementation of final administrative orders, and publicly funded maintained placements.

1154. DOE's policies, customs, practices, ratification, deliberate indifference, and failure to train or supervise caused the violations pleaded herein.

1155. Plaintiff pleads this Count in the alternative and to the extent relief is available under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against DOE.

**Count XVII — Declaratory Relief Against DOE, OATH, NYSED/OSR**

1156. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1157. This Count is asserted against DOE, OATH, the OATH official-capacity Defendants, NYSED, OSR, and Commissioner Rosa in her official capacity.

1158. An actual and justiciable controversy exists between Plaintiff and Defendants concerning Defendants' obligations under the IDEA and related federal law.

1159. Plaintiff seeks declaratory relief against DOE concerning implementation of SRO Decision No. 25-150, pendency funding, resolution meetings, nonpayment, self-stay practices, late fees, interest, and contract-based maintained-placement costs.

1160. Plaintiff seeks declaratory relief against OATH and the OATH official-capacity Defendants concerning timeline administration, extension practices, pendency-delay practices, and hearing administration practices that may not be used to delay, dilute, or defeat C.C.'s automatic pendency rights.

1161. Plaintiff seeks declaratory relief against NYSED, OSR, and Commissioner Rosa concerning State-level review delay, extension practices, general supervision, and review practices that may not be used to delay, dilute, or defeat C.C.'s automatic pendency rights.

1162. Defendants' practices violate the IDEA as applied to C.C.

1163. Defendants' practices cannot be used to delay, dilute, or defeat C.C.'s automatic pendency rights.

1164. Defendants' practices cannot be used to delay, dilute, or defeat enforcement of SRO Decision No. 25-150.

1165. Plaintiff is entitled to declaratory relief against DOE, OATH, the OATH official-capacity Defendants, NYSED, OSR, and Commissioner Rosa in her official capacity.

**Count XVIII — Attorneys' Fees and Costs**

1166. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

1167. This Count is asserted against DOE and, to the extent permitted by law, any other Defendant against whom attorneys' fees, costs, or expenses may be awarded.

1168. Plaintiff is a prevailing or substantially prevailing party within the meaning of the IDEA to the extent relief is obtained through this action.

1169. The IDEA authorizes an award of reasonable attorneys' fees to a prevailing parent of a child with a disability. See 20 U.S.C. § 1415(i)(3)(B).

1170. Plaintiff seeks reasonable attorneys' fees, costs, and expenses under 20 U.S.C. § 1415(i)(3)(B) and all other applicable law.

## XIX. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

1. Declare that SRO Decision No. 25-150 is final, binding, and enforceable;
2. Declare that DOE was required to implement SRO Decision No. 25-150;
3. Order DOE to directly fund C.C.'s unpaid 2024–2025 iBRAIN tuition of $337,124.20;
4. Order DOE to directly fund C.C.'s unpaid 2024–2025 Sisters transportation of $220,993.00;
5. Declare that SRO Decision No. 25-150 established C.C.'s pendency/status quo placement for 2025–2026;
6. Declare that C.C.'s 2025–2026 pendency/status quo includes iBRAIN tuition and Sisters transportation;
7. Order DOE to directly fund C.C.'s unpaid 2025–2026 iBRAIN tuition of $364,266.50;
8. Order DOE to directly fund C.C.'s unpaid 2025–2026 Sisters transportation of $235,662.00;
9. Declare that pendency attached automatically under 20 U.S.C. § 1415(j);
10. Declare that DOE did not obtain a stay;
11. Declare that DOE cannot self-stay through nonpayment, internal processing, administrative delay, appeal posture, documentation review, or failure to complete implementation;

12. Order DOE to provide a complete accounting of all unpaid principal, late fees, interest, and related maintained-placement costs;

13. Order DOE to fund contract-based late fees and interest, or alternatively order an accounting and discovery procedure to determine the precise amounts;

14. Declare that DOE's lack-of-privity defense does not defeat contract-based maintained-placement costs;

15. Declare that DOE violated the IDEA by failing to convene legally compliant resolution meetings;

16. Declare that DOE's resolution-meeting and timeline violations significantly impeded Parent's participation, deprived C.C. and Parent of IDEA procedural safeguards, prolonged nonimplementation, and constituted a procedural denial of FAPE;

17. Declare that no new IHO pendency order, DOE agreement, completion of the pending SRO appeal, or federal preliminary injunction was required before DOE had to maintain C.C.'s pendency/status quo placement;

18. Declare that the placement-setting findings and orders in SRO Decision No. 25-150 established C.C.'s pendency/status quo for 2025–2026 regardless of any pending or disputed equitable, remedial, direct-payment, late-fee, interest, implementation, or payment-processing issues;

19. Declare that exhaustion is unnecessary and futile for Plaintiff's pendency enforcement, SRO enforcement, implementation, and delay claims;

20. Declare that DOE's nonpayment after SRO Decision No. 25-150 and during the pending 2025–2026 appeal cannot operate as a practical stay;

21. Declare that OATH and NYSED/OSR may not administer hearing or review timelines in a manner that nullifies C.C.'s automatic pendency rights;

22. Declare that OATH violated IDEA timeline, pendency, and extension requirements as applied to C.C.;

23. Declare that NYSED/OSR violated IDEA review-timeline obligations and failed to ensure timely State-level review as applied to C.C.;

24. Declare that Defendants' challenged practices may not delay, dilute, or defeat enforcement of SRO Decision No. 25-150 or C.C.'s automatic pendency rights;

25. Preserve Plaintiff's right to seek review of adverse or incomplete 2025–2026 administrative determinations once final or otherwise reviewable, while enforcing C.C.'s automatic pendency rights during the pending administrative process;

26. Award reasonable attorneys' fees, costs, and expenses under 20 U.S.C. § 1415(i)(3)(B);

27. Award such other and further relief as the Court deems just and proper.

Dated: May 20, 2026

New York, New York

Respectfully submitted,
Liberty & Freedom Legal Group

By: */s/ Jeffrey Arlen Spinner*
Jeffrey Arlen Spinner (JS22178)
Attorneys for Plaintiff
105 East 34th Street, No. 190
New York, New York 10016
Telephone: (646) 850-5035
Email: jeff@pabilaw.org